**INGALLS SHIPBUILDING, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 183–77C.

United States Claims Court.

July 27, 1990.

David V. Anthony, Washington, D.C., for plaintiff. Gregory A. Smith and Paul C. Fuener, Washington, D.C., of counsel.

Helene Goldberg and John A. Kolar, with whom were David M. Cohen and Michael F. Hertz, Directors, and Stuart M. Gerson, Asst. Atty. Gen., U.S. Dept. of Justice, Washington, D.C., for defendant.

## OPINION

SMITH, Chief Judge.

This case comes before the court on plaintiff's renewed motion for summary judgment, following the Federal Circuit's reversal of the court's imposition of discovery sanctions against defendant. The court must now decide, some twenty years after the inception of the contract, whether plaintiff's claim for an equitable adjustment should be forfeited on the ground that plaintiff's claim was fraudulent. The issues presented are: (i) whether the court may ignore the factual findings of the Armed Services Board of Contract Appeals (ASBCA), rendered after a sixty-nine day trial, when the government does not challenge those findings; and (ii) whether the government has raised a genuine issue of material fact concerning plaintiff's fraud

before the contracting officer (CO). For the reasons given below, plaintiff's renewed motion for summary judgment is granted.

## FACTS

In 1968, the United States Navy awarded Ingalls Shipbuilding[1] a contract for the construction of three nuclear attack submarines, at a price of $107,400,000. Ingalls originally proposed that the first submarine be delivered on September 15, 1971, the second six months later, and the third six months thereafter. The contracting officer (CO) later asked that the first submarine not be delivered until August, 1972. Although Ingalls was concerned over the delay, Ingalls and the Navy agreed to "stretch out" the work, with Ingalls submitting cost proposals to reflect the revised delivery schedule. Further compounding the delay was a late shipment of government-furnished steel. Thus, Ingalls withdrew its prior cost proposal and sought a $34,000,000 equitable adjustment in the contract price, to reflect a total delay of seventeen and one-half months from Ingalls' original proposed delivery date for the first submarine.

On July 31, 1972, the CO issued a decision allowing a $3,800,000 equitable adjustment. Litton appealed this decision to the ASBCA, which held a sixty-nine day trial in 1974, and two years later, awarded Ingalls a $17,361,586 equitable adjustment. *Ingalls Shipbuilding Div., Litton Systems,* ASBCA No. 17717, 76–1 BCA (CCH) ¶ 11851 (1976). The ASBCA made extensive findings of fact, pertinent portions of which are set out below:

> [T]he government contends that [Ingalls] lacked manpower in hull trades, and that it was this deficiency rather than late hull steel which required it to subcontract hull work as it did.... [We find] no merit in this argument.
>
> \*  \*  \*  \*  \*  \*

---

1. On November 4, 1987, Ingalls Shipbuilding, Inc..was substituted as party plaintiff for the original plaintiff, Litton Systems. For convenience, the court will refer to the contractor as "Ingalls" throughout.

[We also] ... reject the government's contentions that [Ingalls'] shipbuilding facilities were inadequate....

76–1 BCA (CCH) ¶ 11,851, at 56,721, 56,754.

During the ASBCA trial, the government had been conducting an investigation into the possibility that Ingalls committed criminal fraud in seeking an equitable adjustment to the submarine contract. The government requested a stay of the ASBCA proceedings pending the outcome of the investigation, but the ASBCA denied the request.

On April 6, 1977, a grand jury indicted Ingalls on one count of submitting a false claim. On the same day, Ingalls filed the present case in the Court of Claims [2] seeking enforcement of the ASBCA award. The government agreed to make provisional payment of the $17,361,586, and then filed in its answer a Special Plea in Fraud under 28 U.S.C. § 2514, a counterclaim under the civil portion of the False Claims Act, 31 U.S.C. §§ 3729–3731, and a counterclaim demanding the return of the $17,361,586 provisionally paid.

The statute under which the government seeks forfeiture provides:

A claim against the United States shall be forfeited to the United States by any person who corruptly practices or attempts to practice any fraud against the United States in the proof, statement, establishment, or allowance thereof.

In such cases the United States Claims Court shall specifically find such fraud or attempt and render judgment of forfeiture.

28 U.S.C. § 2514 (1988).

The case in the Court of Claims was suspended pending the outcome of the criminal proceedings. The United States District Court for the Eastern District of Virginia subsequently dismissed the criminal case for prosecutorial misconduct. The Fourth Circuit reversed and remanded. *United States v. Litton Systems,* 573 F.2d 195 (4th Cir.1978). Following the remand, the case was transferred to the United States District Court for the Southern District of Mississippi, which dismissed the case for failure to prosecute; five years had passed since the indictment. On appeal, the Fifth Circuit reversed. *United States v. Litton Systems,* 722 F.2d 264 (5th Cir.1984). After a two-month trial, the jury acquitted Ingalls. The present case was then reactivated.[3] The government then filed an amended answer, in which it abandoned its civil False Claims Act counterclaim.

Ingalls subsequently filed three motions: (i) a motion to dismiss the government's Special Plea in Fraud under 28 U.S.C. § 2514, on the basis that fraud claims, whether affirmative actions or counterclaims, can only be heard in courts established under Article III of the federal Constitution (the Claims Court was established under Article I); (ii) a motion for sanctions against the government under RUSCC 37(b)(2)(A), for the government's failure to provide complete responses to Ingalls' interrogatories regarding which of the ASBCA's findings of fact were, in the government's view, tainted by fraud; and (iii) a motion for summary judgment on the government's counterclaim under section 2514.

The court denied the motion to dismiss. *Ingalls Shipbuilding v. United States,* 13 Cl.Ct. 757, 767 (1987). The court granted Ingalls' motion for sanctions under RUSCC 37(b)(2)(A), and as a sanction, precluded the government from introducing evidence of fraud. 13 Cl.Ct. at 773. The court also concluded that the ASBCA decision was

---

**2.** Both the contract and the claim for an equitable adjustment predated the passage of the Contract Disputes Act, 41 U.S.C. §§ 601–613. Under pre-Act procedures, the government was bound by the standard disputes clause to abide by any award made by an agency board of contract appeals. The contractor's remedy, in the event that the government refused to pay such an award, was a suit for breach of contract in the Court of Claims.

**3.** In 1982, Congress passed the Federal Court Improvement Act, codified at 28 U.S.C. § 1491 (and throughout title 28), which, among other things, abolished the Court of Claims. The newly-created Claims Court inherited the docket and the original jurisdiction of the Court of Claims.

entitled to finality, and on that basis, granted Ingalls' motion for summary judgment. *Id.* at 774.

The Federal Circuit reversed and remanded, holding that the court improperly used a discovery sanction as a vehicle for dismissing a case which "the [Claims Court] felt had no merit." *Ingalls Shipbuilding v. United States*, 857 F.2d 1448, 1451 (Fed.Cir.1988). The court stated that "[i]n the circumstances here, there needed to be a predicate warning order" before imposing a sanction which amounted to a *de facto* dismissal. 857 F.2d at 1455.

The case is currently before the court on Ingalls' renewed motion for summary judgment. Point I of the government's brief in opposition to Ingalls' renewed motion for summary judgment states:

> Defendant does not agree that the testimony and documents which plaintiff submitted to the ASBCA were truthful and free of fraud. However, although plaintiff [4] is not bound to do so by the Court of Appeals' decision, defendant elects for reasons of litigative efficiency to limit its case to the fraud contained in the claim submitted to the contracting officer.

## DISCUSSION

Whether the government's case can survive plaintiff's motion for summary judgment depends heavily on the application of the doctrine of collateral estoppel to the unchallenged findings of fact rendered by the ASBCA, so the court addresses this issue first. The court will go on to discuss whether the government raises a genuine issue of material fact sufficient to defeat plaintiff's renewed motion for summary judgment, in light of the unchallenged ASBCA findings. Finally, the court will discuss the government's continued prosecution of its fraud claim in the context of the due process protections of the fifth amendment.

### I. Collateral estoppel and the ASBCA findings.

The court first addresses plaintiff's claim that the ASBCA findings of fact cannot be reexamined. Although Ingalls initially made the broad argument that the court cannot, under any circumstances, reexamine those findings, it correctly points out that in light of the government's decision not to challenge the ASBCA findings of fact, the court need not decide the parameters of the so-called fraud exception to the finality rule contained in 28 U.S.C. § 2514. A claim of fraud before the CO simply cannot stand side by side with the ASBCA's detailed findings of fact. The mere assertion, without more, that the government disagrees with the ASBCA's findings, is no warrant for the court to set aside those findings, even if section 2514 provides an exception to the finality rule. Although the government's various arguments concerning the application of collateral estoppel to the ASBCA findings overlap one another, the court will attempt to treat each argument individually.

■ In order to prevail in its fraud counterclaim under 28 U.S.C. § 2514, the government must show that plaintiff knowingly or recklessly made false or fraudulent statements to the CO, and it must show that plaintiff made such statements with the intent to deceive the CO concerning the validity of Ingalls' claim. *See Miller v. United States*, 213 Ct.Cl. 59, 550 F.2d 17 (1977). Here, the government is precluded under the principle of collateral estoppel from showing that plaintiff knowingly or recklessly made false or fraudulent statements, so its fraud counterclaim fails as a matter of law.

The requirements for the application of the doctrine of collateral estoppel are:

> (1) [T]he issues to be concluded are identical to those involved in the prior action; (2) in that action the issues were raised and "actually litigated;" (3) the determination of those issues in the prior action was necessary and essential to the resulting judgment; and (4) the party precluded ... was fully represented in the prior action.

*DWS, Inc. v. United States*, 18 Cl.Ct. 453, 458 (1989) (quoting *Mother's Restaurant,*

---

**4.** This is apparently an error, and should probably read "defendant."

*Inc. v. Mama's Pizza, Inc.,* 723 F.2d 1566, 1569 (Fed.Cir.1983)).

■ The government contends that the first and second elements—identity of issues and actual litigation—are not met here, in that the issue of whether Ingalls' claim was fraudulent was not even before the ASBCA. However, the issue to be given preclusive effect is not fraud, but the truthfulness of documentary evidence submitted to the CO. The government was allowed fully and fairly to litigate that issue in the context of whether or not the factual averments made in the claim, and by Ingalls' witnesses on the stand, were true. While the ASBCA had no authority to entertain a counterclaim in fraud, it did have the authority—the duty, even—to determine whether the evidence submitted in support of Ingalls' claim was factually accurate. Thus, the parties actually litigated the issue of the truth or falsity of the evidence supporting the claim.[5]

■ The government further argues that the ASBCA's refusal to stay proceedings until a grand jury could investigate plaintiff's alleged criminal fraud was prejudicial, because evidence of fraud only later came to light during the process of the grand jury investigation. However, the government did have a full and fair opportunity to litigate the issue of the falsity of the claim submitted to the CO under civil discovery devices and civil standards of proof.

In the same vein, the government argues that it was unable fully and fairly to litigate the issue of falsity at the ASBCA proceeding because it could not, due to the concerns of secrecy surrounding the criminal investigation, disclose certain witnesses and evidence. The court need not decide, as a general matter, whether an agency board must always grant the government's request for a stay of civil proceedings pending the outcome of a criminal investigation. It is sufficient to note that the

government was unable to prove falsity in 1974, and it is still unable to produce competent evidence of fraud (see section II below), even after a full criminal investigation and two trials. Thus, with the benefit of hindsight, the court concludes that the ASBCA's denial of the government's request for a stay did not prejudice the government.

■ When an administrative agency acts in a judicial capacity and resolves disputed issues of fact properly before it which the parties had an adequate opportunity to litigate, those findings are final and conclusive in a subsequent action between the same parties, if the subsequent action arises from the same facts. *See United States v. Utah Constr. & Mining,* 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966). It is irrelevant, therefore, that the cause of action before the ASBCA was a claim for an equitable adjustment and the cause of action in this case is the government's fraud counterclaim. The cause of plaintiff's increased subcontracting costs *is* the disputed factual issue in both cases.

The government attempts to avoid the *Utah Constr. & Mining* holding by citing *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), for the proposition that because the ASBCA had no power to render a judgment of forfeiture under section 2514, those ASBCA findings of fact which are necessary to prove fraud should not be given preclusive effect. In *Brown,* the court ruled that a state court judgment in favor of the debtor in a collection action was not entitled to preclusive effect in a federal bankruptcy proceeding under *res judicata* principles, where the creditor argued in the bankruptcy proceeding that the debt was not dischargeable due to the debtor's alleged fraud and malicious conversion. The court in dictum indicated that the outcome might have been different had the debtor brought collateral estoppel as a

---

5. The government makes the related argument that collateral estoppel should not apply because the Navy attorneys who handled the ASBCA proceeding were precluded by statute from litigating plaintiff's alleged fraud. However, the Navy attorneys were empowered to argue to the court that the witnesses on the stand were lying, or that any factual averment made before the ASBCA was inaccurate. Indeed, challenging the veracity of Ingalls' evidence is the very reason why the Navy appeared, through its attorneys, before the ASBCA.

defense. 442 U.S. at 139, n. 10, 99 S.Ct. at 2213, n. 10. Furthermore, the *Brown* court based its ruling on the recognition that giving state court judgments preclusive effect in a bankruptcy case would undermine Congress' aim of creating a uniform federal body of bankruptcy law. By contrast, giving ASBCA findings of fact collateral estoppel effect in this court raises no danger of creating an inconsistent federal government contract jurisprudence, since the ASBCA was, and is, a coordinate branch in the federal contract dispute-resolution process.

The government alleges, *inter alia,* that plaintiff's original 1970 proposal to the CO was false on its merits with regard to the lateness of the steel, the adequacy of manpower and platen space, and the correct sequence of hull erection. However, the truth or falsity of these allegations was necessarily decided in the ASBCA proceeding, and the government fully and fairly litigated the falsity issue in that proceeding. The government cannot now relitigate this issue simply because it is unhappy with the prior findings.

The government's two remaining arguments require only brief consideration. The government argues that public policy mandates that collateral estoppel not apply, and that the statute under which the government is claiming fraud provides an exception to the doctrine of collateral estoppel.

■ With respect to the first contention, the government argues that even if the elements of collateral estoppel are met, public policy concerns require the court to ignore the ASBCA findings. Specifically, the government notes that it was precluded, by pre-Contract Disputes Act procedures, from appealing adverse decisions of the agency boards of contract appeals. Hence, the government concludes, the strong public policy of combatting fraud in government procurement dictates that collateral estoppel not apply.

Although this argument sounds colorable in the abstract, 28 U.S.C. § 2514 is a viable substitute for appellate review. If the government were challenging the ASBCA findings of fact, it appears that the court would have the power to reopen those findings under 28 U.S.C. § 2514. However, the court need not decide whether it has such power. Without a challenge to the ASBCA's findings, those findings are binding. The government will not be heard to ask the court to ignore findings of fact rendered fourteen years ago following a sixty-nine day trial, when the government declines to point to any specific findings which it would like reexamined. *See United States v. Munsingwear,* 340 U.S. 36, 41, 71 S.Ct. 104, 107, 95 L.Ed. 36 (1950) (government cannot ask the court to do what the government could have done for itself by orderly procedure).

■ Finally, the government argues that an allegation of fraud under 28 U.S.C. § 2514 *automatically* overcomes the doctrine of collateral estoppel. This argument is based in large part on dictum contained in *S & E Contractors v. United States,* 406 U.S. 1, 92 S.Ct. 1411, 31 L.Ed.2d 658 (1972), a pre-Contract Disputes Act case in which the court stated that finality would apply to an administrative decision "absent fraud or bad faith." 406 U.S. at 15, 92 S.Ct. at 1419. The court referred to fraud cases as a "wholly different genus," and cited 28 U.S.C. § 2514. *Id.* The government reads this dictum as an exception to the finality rule, noting that the court's language indicates that the government possesses expansive ability to "appear or intervene at any time in any appropriate court to restrain enforcement of contracts with the United States based on fraud." *Id.* at 17, 92 S.Ct. at 1420.

However, the court need not decide whether a fraud counterclaim under section 2514 automatically overcomes the doctrine of collateral estoppel. Again, the government does not challenge the ASBCA's findings of fact, and the court sees no reason to ignore them. The government counters that giving preclusive effect to the ASBCA's findings renders 28 U.S.C. § 2514 useless. Specifically, the government claims that the application of the doctrine of collateral estoppel to the prior agency board findings of fact would preclude the

government from ever proving fraud in the Claims Court under section 2514, where the contractor prevails before the board. The court, however, holds only that when findings of fact are not challenged, they are given conclusive effect.

II. Defendant's evidence of fraud.

The court now turns to the question of whether the government's evidence of fraud is sufficient to withstand plaintiff's summary judgment motion, in light of the unchallenged ASBCA findings.

■ RUSCC 56(e) requires that, to preclude summary judgment, the party opposing the motion must "set forth specific facts showing ... a genuine issue for trial...." The government, then, must come forward with a showing of a genuine issue of material fact. In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), the court defined a genuine issue of material fact as one which would allow a reasonable factfinder, after examination of the entire record, to resolve a factual matter in favor of the nonmovant. Under this standard, the government has not offered sufficient evidence of fraud to create a genuine issue. In so holding, the court acknowledges that claims which require evidence of intent should not, as a general matter, be disposed of on summary judgment, *see generally* Wright, Miller & Kane, *Federal Practice and Procedure*, Civil § 2730 (citing cases), but finds that the dearth of evidence offered by the government here compels the court to grant plaintiff's motion for summary judgment.

Defendant's claim under 28 U.S.C. § 2514 consists of a two-part allegation of fraud. First, defendant alleges that plaintiff's original 1970 proposal to the CO was false on its merits with regard to, *inter alia,* the lateness of the steel, the adequacy of manpower and platen space, and the correct sequence of hull erection. Second, defendant claims that certain charts in the 1970 proposal, which were not offered as evidence in the 1976 ASBCA proceeding, contained false information.

■ Each of the government's contentions must be examined in light of the two elements of fraud: first, the government must show that the plaintiff knowingly or recklessly made false or fraudulent statements, and second, it must show that plaintiff made such statements with the intent to deceive the government concerning the validity of the claim against it. *See Miller v. United States*, 213 Ct.Cl. 59 (1977).

■ The first part of the government's claim, that the increased subcontracting costs were attributable to plaintiff's lack of manpower and facilities, fails due to the fact that the ASBCA expressly found to the contrary, and the government does not challenge that finding. Even if the government offered *prima facie* evidence that plaintiff intended to deceive the government by filing a false claim, the ASBCA has already determined that Ingalls had adequate manpower and facilities. Thus, because the court is precluded from finding that Ingalls falsely stated that its manpower and facilities were adequate, the government has failed to raise a genuine issue of material fact.

The government's second claim involves the veracity of certain charts which were included in plaintiff's claim to the CO, but were not offered as evidence in the ASBCA proceeding. The government's evidence of these allegedly false statements and false charts likewise does not satisfy the *Anderson* test.

■ Specifically, the government cites three proposal charts used in the original claim before the CO, and contends that plaintiff intentionally altered the figures in order to deceive the CO into finding in its favor. As evidence of the platen chart's falsity, the government offers exhibits indicating the differences between the chart plaintiff presented to the CO, and the chart as correctly drawn according to the government. However, courts have found that the requisite intent to deceive is not present when the contractor acts through mistake or negligence, *Miller*, 213 Ct.Cl. at 70; *Law v. United States*, 195 Ct.Cl. 370, 450 (1971), and the government offers nothing to support its contention that the differ-

ences constituted anything more than mere inaccuracies. Since the government offers no evidence that plaintiff intended to deceive the CO, or even that plaintiff knew of the inaccuracies in the chart, the government does not meet its burden with regard to the platen chart.

▮ With regard to the two manpower charts in plaintiff's 1970 proposal, the government takes a different approach, but still fails to raise a genuine issue of material fact. Rather than pointing to any inaccuracies or alleged fraudulent figures or graphs, the government refers to testimony given by certain witnesses, known to but not called by the government in the ASBCA proceeding, who testified at the criminal trial regarding their knowledge of the 1970 manpower proposal charts. Most of the statements the government offers are taken out of context, and at most demonstrate that the witnesses gave conflicting testimony at the criminal trial. For example, the government offers, as *prima facie* evidence of fraud, a statement by a witness at the criminal trial who agreed, when asked by the prosecutor, that a curve in a chart was "deceiving." However, the transcript indicates that the *witness added he did not recognize the chart and did not know where it came from.* This type of statement typifies the government's proffer of fraud. Ambiguous statements such as this one do not, in themselves, show fraud, and the government has not offered anything more.

▮ The government argues that the Mississippi district court's decision to deny plaintiff's motion for judgment of acquittal, and to send the case to the jury, is sufficient to raise a genuine issue of material fact in this proceeding. However, the government cites no case for the proposition that a judge's decision to deny a criminal defendant's motion for acquittal raises a genuine issue of material fact in a subsequent civil proceeding relating to the same transactions that were in issue in the criminal proceeding.

▮ Moreover, this argument does not survive basic legal analysis. The government here attempts to apply the collateral estoppel doctrine, apparently saying that the district court "found" that there was *prima facie* evidence of criminal fraud, otherwise, the case would not have been sent to the jury. As such, the argument fails because the district court's decision was not "final," *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970), insofar as the court had the ability to reconsider the motion after the jury rendered its verdict. Similarly, the district court's action was not a "judgment," but simply a refusal to enter a judgment of acquittal. The plaintiff could more persuasively, if no less incorrectly, argue that its acquittal showed that there is no genuine issue of material fact. Plaintiff has not done so.

The government offers no further evidence of fraud. Since the government has failed to raise a genuine issue of material fact, the court must grant plaintiff's motion for summary judgment.

### III. Notions of Due Process Embodied in the Fifth Amendment.

Plaintiff's motion for summary judgment should also be granted on the independent basis that plaintiff's due process rights, as embodied in the double jeopardy clause, place a limitation on the general principle that the government's waivers of sovereign immunity should be strictly construed.

▮ The fifth amendment provides in part that "no ... person [shall] be subject for the same offence to be twice put in jeopardy of life or limb." Generally, the double jeopardy provision prohibits a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding, and prevents the government from honing its trial strategies and perfecting its evidence through successive attempts at conviction. *Tibbs v. Florida*, 457 U.S. 31, 41, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652 (1982).

▮ Although the double jeopardy provision only applies to successive at-

tempts at criminal prosecution,[6] the underlying philosophy for which the framers created the right is applicable in the civil context as well, particularly where a contractor is continually forced to defend both its reputation and its purse. During the past two decades, the government has had two full trials in which to prove that Ingalls was not entitled to additional compensation under the contract; the government has twice failed to prove its case. Given the lack of any new evidence offered before this court, there is an urgent need to end this litigation without holding a third trial.[7]

The government correctly points out that Congress enacted 28 U.S.C. § 2514 in order to limit the government's waiver of sovereign immunity to those claims which were not fraudulent. Nonetheless, plaintiff did not give up its due process rights when it contracted with the government, regardless of the ability of the government to "appear or intervene at any time in any appropriate court to restrain enforcement of contracts with the United States based on fraud." *S & E Contractors*, 406 U.S. at 17, 92 S.Ct. at 1420.

It must be noted that the government was the architect of the dispute-resolution process which it today so adamantly claims is unfair, in that it does not allow the government to raise the defense of fraud until after an agency board has issued a decision. The government cannot create a system and then subsequently complain, in court, about the system's inadequacies.

The government's awareness of the shortcomings of the dispute-resolution process, and its willingness and ability to reform the process, is evidenced by the passage of the Contract Disputes Act of 1978, which was enacted after both the contract and the claim at issue here, and therefore does not govern the resolution of this dispute. Nevertheless, the Senate Report on Pub.L. 95–563, the Contract Disputes Act, is illuminating:

> The present means for resolving disputes under Government contracts is a mixture of contract provisions, agency regulations, judicial decisions, and statutory coverage. Basically the methods and forums for handling such disputes exist by executive branch fiat....

> \*     \*     \*     \*     \*     \*

> Direct access to the courts is limited to so-called breach of contract claims, and agencies can, and do, circumscribe such access by terms and conditions in contracts that are not, in general, subject to negotiation. In other words, the contractor has little choice in the matter.

> In large part, the present Government contract remedies system has developed in an unplanned manner. Many of the rules and requirements that govern the system are the result of unstructured reactions to various events and decisions.

Sen.Report 95–1118, 95th Cong., 2d Sess., *reprinted in 1978 U.S.Code Cong. & Admin.News* 5235, 5236–37. The Senate report notes further that this unplanned system "often fail[ed] to provide the procedural safeguards and other elements of due process that should be the right of litigants." *Id.* at 5238.

When a statute, as applied, creates an absurd or futile result, the court may look beyond the words of the statute to the intent of the legislature in interpreting its meaning. *Steuer v. United States*, 207 Ct.Cl. 282, 294 (1975). Congress could not

---

**6.** In *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), the Supreme Court ruled that the double jeopardy clause barred the government from seeking civil penalties under the civil False Claims Act, where the defendant had already been sanctioned criminally for submitting false Medicare claims, and where the penalties sought in the civil proceeding bore no relation to the injury sustained by the government. The present case is distinguishable from Halper on two grounds: (i) Ingalls has never been sanctioned criminally; and (ii) the remedy sought here, forfeiture, bears a direct relationship to the alleged injury suffered by the government. In light of the Supreme Court's admonition that *Halper* should be limited to its facts, the court declines plaintiff's invitation to extend *Halper* to the present case.

**7.** Eight of Ingalls' witnesses have died since the claim was originally filed in 1970. Such a consequence of seemingly endless litigation supports the conclusion that plaintiff's due process rights would be violated by trying this case for a third time under 28 U.S.C. § 2514.

have intended that in entertaining a counterclaim under 28 U.S.C. § 2514, the court cast aside the notion that at some point, a contractor seeking additional compensation should enjoy repose from allegations of fraud. The government currently attempts to use 28 U.S.C. § 2514 to thwart rather than to promote justice, and the court holds that the drafters did not intend for the statute to be employed in the manner in which the government asks the court to apply it today.

## CONCLUSION

In light of the unchallenged ASBCA findings of fact, the government's evidence of fraud is insufficient to raise a genuine issue of material fact. Furthermore, plaintiff did not give up its right to due process of law when it contracted with the Navy. Therefore, plaintiff's motion for summary judgment on defendant's counterclaim and special plea in fraud is granted. The clerk is directed to enter judgment in favor of plaintiff in the sum of $17,361,586.