**Philip EMIABATA d/b/a Nova Express, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 06–702C.

United States Court of Federal Claims.

Oct. 30, 2009.

Philip Emiabata d/b/a Nova Express, Austin, TX, Pro se.

Devin A. Wolak, Trial Attorney, with whom were Gregory G. Katsas, Acting Assistant Attorney General, and Jeanne E. Davidson, Director, and Mark A. Melnick, Assistant Director, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., for Defendant.

## OPINION and ORDER

SMITH, Senior Judge:

Plaintiff, Philip Emiabata, acting as the principal of Nova Express, filed this suit to recover $2.5 million in damages for wrongs allegedly committed by the United States Postal Service and its employees in connection with contract nos. HCR 78653 and HCR 78640. In his Complaint, Mr. Emiabata alleges that the United States Postal Service breached its implied covenant of good faith and fair dealing by interfering with the performance of Nova Express' contracts.

Now before the Court is Defendant's Motion for Summary Judgment, pursuant to RCFC 56(b), which argues that Mr. Emiabata is collaterally estopped from relitigating the same claims for damages that were previously adjudged by final order of the Postal Service Board of Contract Appeals. After careful consideration, and for the reasons set forth in this opinion, the Court hereby **GRANTS** Defendant's Motion for Summary Judgment.

## I. FACTS[1]

Mr. Emiabata is the principal owner of Nova Express, an independent government contractor located in Austin, Texas. Between the years 2000 and 2001, the United States Postal Service (USPS) awarded Nova Express two contracts, nos. HCR 78653 and HCR 78640, for the transportation of mail between several Postal Service facilities located in rural Texas towns.

### A. Contract no. HCR 78653

In April 2000, the USPS awarded contract no. HCR 78653[2] to Nova Express for the transportation of USPS mail between the Austin, Texas Processing and Distribution

1. The facts herein are drawn principally from Defendant's Proposed Findings of Uncontroverted Fact (Dkt.# 23), the Opinion of the Postal Service Board of Contract Appeals regarding Plaintiff's challenge to the decision not to renew contract no. HCR 78653, *Nova Express*, 2008 PSBCA LEXIS 2 (Postal Serv. B.C.A. Jan. 10, 2008), and the Opinion of the Postal Service Board of Contract Appeals regarding the termination for default of contract no. HCR 78640,

*Nova Express*, 2007 PSBCA LEXIS 7 (Postal Serv. B.C.A. June 11, 2007).

2. Performance of the contract began on May 6, 2000 and was completed on June 30, 2003. Nova Express received an annual compensation of $76,000.00 for the performance of the contract.

Center (Distribution Center) and post offices in Driftwood, Wimberley, Dripping Springs, Blanco and Fischer, Texas.

On October 30, 2002, an altercation occurred in the Distribution Center between a driver for Nova Express and a driver from another mail transportation contractor. After an investigation of the incident, the plant manager, Ms. Susan Plonkey, barred both drivers involved in the altercation from the Distribution Center. In a subsequent letter to Mr. Emiabata, the Contracting Officer (CO) confirmed Ms. Plonkey's decision to bar the drivers from the facility. Nova Express appealed this decision, and the appeal was dismissed by the CO on December 16, 2002.

On June 20, 2003, ten days before the end of the contract period, the CO notified Nova Express that the USPS would not renew the contract. The CO's determination was based on Nova Express' poor contract performance, as well as the confrontational nature in which Nova Express' owners conducted business with USPS officials. Nevertheless, the CO allowed the contract to be extended on an accounting-period-by-accounting-period basis if Nova Express wished to appeal the non-renewal decision.

On July 7, 2003, both parties agreed to extend the contract on an accounting-period-by-accounting-period basis ending no later than September 30, 2003. Within that time, Nova Express appealed the decision not to renew HCR 78653 to the Manager of Surface Transportation at the Postal Service Headquarters. On October 17, 2003, the Manager of Surface Transportation denied Nova Express' appeal.

### B. Contract no. HCR 78640

In October 2001, the USPS awarded Nova Express contract no. HCR 78460 [3] for the transportation of USPS mail between the Distribution Center and Round Rocks West, Texas. As an express condition of HCR 78640, Nova Express was required to establish and continuously maintain liability insurance policies providing a minimum coverage of $750,000 "Combined Single Limit" for each

truck used in performance of the contract. The insurance provision of the contract further required Nova Express to provide the CO with copies of the relevant insurance policies throughout performance of the contract. Furthermore, the contract allowed the USPS to terminate the contract for default if Nova Express failed to maintain the proper liability insurance, provided that the CO send a cure notice to Nova Express, allowing three days to remedy the deficiency.

On September 3, 2002, Nova Express initially obtained the requisite liability insurance policy for the trucks used in performance of HCR 78640 from Fireman's Fund County Mutual (Fireman's Fund). However, on April 7, 2003, Fireman's Fund cancelled Nova Express' insurance policy for failure to make the required installment payments and notified Nova Express of the cancellation sometime in May 2003. Nova Express never informed the CO that the policy had been cancelled, nor did Nova Express replace the policy at any time prior to September 26, 2003.

In September 2003, a contract specialist, working on behalf of the CO, noted that Nova Express' insurance policy had expired and attempted to contact Mr. Emiabata several times without success. After contacting the insurance company directly, Fireman's Fund informed the contract specialist that the insurance policy for Nova Express had been cancelled in April 2003. As a result, the CO sent a letter to Nova Express on September 10, 2003, suspending Nova Express' right to perform the contract citing the apparent lack of liability insurance. Furthermore, the CO sent Nova Express a cure notice on September 23, 2003, advising Nova Express that if they did not submit proof demonstrating continuous liability coverage by the close of business on September 26, 2003, HCR 78640 would be terminated for default.

In response to the CO's letters, Mr. Emiabata faxed numerous documents that he contended proved that Nova Express maintained the required liability insurance coverage. The documents included the Fireman's Fund

---

**3.** The contract term began on December 1, 2001 and ended on June 30, 2005 with annual compensation to Nova Express in the amount of $56,748.00.

insurance policy, as well as copies of rental agreements for trucks used during performing the contract. However, on September 30, 2003, the CO terminated HCR 78640 for default, citing Nova Express' failure to maintain the required liability insurance and failure to provide adequate proof. After receiving the notice of default termination, Nova Express filed an appeal with the CO. On September 3, 2004, the CO issued a final decision denying Nova Express' appeal.

### C. Appeals before the Postal Service Board of Contract Appeals

In October 2004, Mr. Emiabata, acting on behalf of Nova Express, filed numerous cases with the United States Postal Service Board of Contract Appeals ("PSBCA") concerning contract nos. HCR 78653 [4] and HCR 78640.[5]

The appeal arising out of HCR 78653 primarily involved Mr. Emiabata's challenge to the decision by the CO not to renew the contract after it expired on June 30, 2003. At the PSBCA, Mr. Emiabata alleged that the USPS acted out of bad faith, or with malicious intent, when deciding not to renew the contract. However, after examining the contract's renewal provision, the PSBCA found that the CO did not abuse his discretion in deciding not to renew the contract of Nova Express. Furthermore, the PSBCA found that Mr. Emiabata failed to prove that the USPS acted in bad faith. Mr. Emiabata appealed the PSBCA's decision to the Court of Appeals for the Federal Circuit [6], however, his petition was dismissed as untimely.[7]

In addition, Mr. Emiabata appealed the default termination of HCR 78640. Mr. Emiabata argued that the termination was improper, alleging that the USPS acted in bad faith while administering and eventually terminating the contract. However, the PSBCA upheld the default termination finding that the CO was justified in terminating Nova Express' contract. The PSBCA found that Mr. Emiabata knowingly breached his contractual obligation to continuously maintain the required liability coverage, and that the submission made by Nova Express on September 26, 2003 did not prove the existence of the required insurance. Furthermore, the PSBCA found that Mr. Emiabata's allegations of bad faith with respect to HCR 78640 were without merit.

Mr. Emiabata subsequently appealed the PSBCA's decision regarding contract no. HCR 78640 to the Court of Appeals for the Federal Circuit. After careful review of the record, the Federal Circuit stated that the Board wrote "a thorough opinion [and] carefully reviewed the testimony and exhibits before it." [8] The Court also found that there was no reversible error in the PSBCA's decision and affirmed the PSBCA's opinion.

### II. STANDARD OF REVIEW

The Court recognizes that Mr. Emiabata is proceeding *pro se* and is "not expected to frame issues with the precision of a common law pleading." *Roche v. U.S. Postal Serv.*, 828 F.2d 1555, 1558 (Fed.Cir. 1987). Moreover, pleadings drafted by *pro se* litigants are held to a "less stringent standard than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Accordingly, the Court has carefully examined Mr. Emiabata's briefs and has attempted to discern all of his legal arguments.

---

4. The appeals relating to HCR 78653 were docketed as PSBCA nos. 5102, 5204 and 5206, and were consolidated into a single trial. *See Nova Express*, 2008 PSBCA Lexis 2 (Postal Serv. B.C.A. Jan. 10, 2008).

5. The appeals relating to HCR 78640 were docketed as PSBCA nos. 5101, 5205 and 5268, and were consolidated into a single trial. *See Nova Express*, 2007 PSBCA LEXIS 7 (Postal Serv. B.C.A. June 11, 2007).

6. Pursuant to 28 U.S.C. § 1295(a)(10), the United States Court of Appeals for the Federal Circuit has jurisdiction to hear an appeal from the Postal Service Board of Contract Appeals arising out of a claim under § 8(g)(1) of the Contract Disputes Act of 1978. *See* 28 U.S.C. § 1295(a)(10) (2006).

7. The Opinion of the United States Court of Appeals for the Federal Circuit is unpublished and can be found at: *Nova Express v. Potter*, 314 Fed.Appx. 297 (Fed.Cir.2008).

8. The Opinion of the United States Court of Appeals for the Federal Circuit is unpublished and can be found at: *Nova Express v. Potter*, 277 Fed.Appx. 990 (Fed.Cir.2008).

Under RCFC 56, summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* RCFC 56(c)(1); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Jay v. Sec'y of Dep't of Health & Human Servs.,* 998 F.2d 979, 982 (Fed.Cir.1993). The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material if it might "affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Disputes over facts that are not outcome determinative will not preclude the entry of summary judgment. *Id.* Here, the material facts are not in dispute, therefore, disposition by summary judgment is appropriate.

## III. DISCUSSION

### A. Collateral Estoppel

In its Motion for Summary Judgment, Defendant argues that Mr. Emiabata is precluded from relitigating his claims in this Court because the claims are barred by the doctrine of collateral estoppel. (Def.'s Mot. for Summ. J. at 6.) Under the doctrine of collateral estoppel, "a judgment on the merits in a first suit precludes relitigation in a second suit of issues actually litigated and determined in the first suit." *In re Freeman,* 30 F.3d 1459, 1465 (Fed.Cir.1994). As such, collateral estoppel is applicable when: (1) the issue previously adjudicated is identical with that now presented; (2) the issue must have been actually litigated; (3) the determination of the issue in the prior action was necessary and essential to the resulting judgment; and (4) the party defending against preclusion must have had a full and fair opportunity to litigate the issue in the prior action. *Banner v. United States,* 238 F.3d 1348, 1354 (Fed.Cir.2001). Accordingly, this Court must compare the issues presented by Mr. Emiabata with the issue previously litigated at the PSBCA.

In his Complaint before this Court, Mr. Emiabata alleges the USPS breached its implied covenant of good faith and fair dealing [9] by preventing Nova Express' performance of contract nos. HCR 78653 and HCR 78640. Specifically, Mr. Emiabata alleges that the USPS intended to interfere with the performance of his contracts when Ms. Plonkey banned him from the Distribution Center in April 2003. (Compl. at 2.)

Generally, the covenant of good faith and fair dealing imposes a duty on both parties not to interfere with the other party's performance. *Centex Corp. v. United States,* 395 F.3d 1283, 1304 (Fed.Cir.2005). In analyzing whether there has been a breach of the covenant of good faith and fair dealing, the Court must proceed with the presumption that government officials act in good faith. *Kalvar Corp. v. United States,* 543 F.2d 1298, 1301 (Fed.Cir.1976). The Federal Circuit has described the high standard required to overcome the presumption of good faith on the part of a government official as requiring "well-nigh irrefragable proof." *Am–Pro Protective Agency, Inc. v. United States,* 281 F.3d 1234, 1239 (Fed.Cir.2002). Thus, to prove a breach of the covenant, Mr. Emiabata must provide "facts constituting a specific intent to injure [the] plaintiff on the part of the government official." *Texas Instruments, Inc. v. United States,* 991 F.2d 760, 768 (Fed.Cir.1993).

In response to Mr. Emiabata's allegations, Defendant argues that Mr. Emiabata's claim under the covenant of good faith and fair dealing arises out of the same set of operative facts and raises identical issues to those already litigated and decided upon by the PSBCA. (Def.'s Mot. for Summ. J. at 9–12.) While litigating at the PSBCA, Mr. Emiabata alleged that the decisions not to renew HCR 78653 and to terminate for default HCR 78640 were rooted in a conspiracy of bad faith and misrepresentations, with the

---

**9.** The covenant of good faith and fair dealing is an implied duty that imposes obligations on both contracting parties that include the duty not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract. *See Centex Corp. v. United States,* 395 F.3d 1283, 1304 (Fed.Cir.2005).

intent to injure, by the USPS employees. In upholding the default termination of HCR 78640, the PSBCA stated:

> While substantial friction may have existed between Appellant's owner and a number of Respondent's employees during contract performance, that does not prove bad faith on Respondent's part. Appellant has not shown by clear and convincing evidence that Respondent's officials acted *maliciously or with intent to harm*, which showing is required to sustain a finding of bad faith.

(Def.'s Mot. for Summ. J. at A13–14 (internal citations omitted) (emphasis added).)

Similarly, the PSBCA addressed Mr. Emiabata's claim that the USPS acted in bad faith by not renewing HCR 78653 by stating:

> What we did find was substantial friction between Appellant's owner and a significant number of Respondent's employees responsible for administering the contract and monitoring Appellant's performance. However, that friction, especially as Appellant's owner largely precipitated it, *does not prove bad faith on Respondent's part.* In fact, the acrimonious working relationship that had developed provided a reasonable ground for a decision not to renew Appellant's contract.

(Def.'s Mot. for Summ. J. at A32 (internal citations omitted) (emphasis added).)

It appears to the Court that the relevant issue presented by Mr. Emiabata's Complaint is identical to the issue already litigated at the PSBCA. Although Mr. Emiabata's Complaint in this Court alleges a breach of the covenant of good faith and fair dealing, the underlying allegation made by Mr. Emiabata in both forums is that the USPS and its employees acted with the intent to injure him through bad faith. Further, Mr. Emiabata has not provided this Court with any additional facts, beyond those presented before the PSBCA, indicating that the USPS and its employees had "a specific intent to injure" him. *Texas Instruments,* 991 F.2d at 760.

It is generally settled that collateral estoppel applies not only to court judgments, but also "to those determinations of administrative bodies that have attained fi-nality." *Astoria Federal Savings & Loan Ass'n v. Solimino,* 501 U.S. 104, 111, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991). As such, collateral estoppel may apply to decisions of a Board of Contract Appeals that are deemed final. *Cumberland Casualty & Surety Co. v. United States,* 2008 WL 4725449 (2008) (citing *Astoria,* 501 U.S. at 107, 111 S.Ct. 2166). In this case, the PSBCA found that the USPS employees did not act in bad faith or with the intent to injure Mr. Emiabata with regard to the refusal to renew HCR 78653 and the default termination of HCR 78640. Furthermore, both Opinions of the PSBCA were granted appellate review by the Court of Appeals for the Federal Circuit. The Federal Circuit ultimately affirmed the decision from HCR 78640 and dismissed as untimely the decision from HCR 78653. Therefore, this Court recognizes the decisions made by the PSBCA as final, thereby precluding Mr. Emiabata from relitigating the same issues.

## B. Res Judicata

In his reply to Defendant's Motion for Summary Judgment, Mr. Emiabata argues that the claim for the breach of the covenant of good faith and fair dealing was specifically withheld from the PSBCA in order for the claim to be litigated in this Court as a contractual claim. (Pl.'s Resp. at 2, 4.) To the extent that Mr. Emiabata's allegation that the USPS breached the covenant of good faith and fair dealing is different from the claims raised at the PSBCA, Mr. Emiabata would still be unable to litigate such a claim in this Court due to res judicata.

Similar to the doctrine of collateral estoppel, the doctrine of res judicata determines whether a claim arising out of the same operative facts is precluded from being litigated in a subsequent court. The Court of Appeals for the Federal Circuit defines res judicata as "constitut[ing] ... two preclusion concepts: 'issue preclusion' and 'claim preclusion.'" *Carson v. Dep't of Energy,* 398 F.3d 1369, 1375 (Fed.Cir.2005). In describing the difference between issue preclusion and claim preclusion, the Federal Circuit explains:

> Issue preclusion refers to the effect of judgment in foreclosing relitigation of a

matter that has been litigated and decided. This effect is also referred to as direct or collateral estoppel. Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit.

*Sharp Kabushiki Kaisha v. Thinksharp, Inc.*, 448 F.3d 1368, 1370 (Fed.Cir.2006) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984)). Further, the United States Court of Federal Claims has recognized the decisions of a Board of Contract Appeals to preclude, by res judicata, the litigation of claims that should have been litigated before the Board of Contract Appeals. *See, e.g., Zoeller v. United States*, 65 Fed.Cl. 449, 457 (2005); *Ingalls Shipbuilding, Inc. v. United States*, 21 Cl.Ct. 117, 122–25 (1990).

In analyzing the claim preclusion aspect of res judicata, "there must be (1) an identity of the parties involved or their privies, (2) a final judgment on the merits of the prior claim, and (3) the second claim must be based on the same transactional facts as the first and should have been litigated in the prior case." *Sharp Kabushiki Kaisha*, 448 F.3d at 1370. Here, Mr. Emiabata's claims before this Court arise out of the USPS's decision not to renew HCR 78653 and the default termination of HCR 78640. Although Mr. Emiabata argues that the claims he raises before this Court are different from the claims raised at the PSBCA, the previous and current claims arise out of the same set of transactional facts, alleged under HCR 78653 and HCR 78640. Furthermore, the PSBCA had jurisdiction to hear Mr. Emiabata's claim regarding the alleged breach of the covenant of good faith and fair dealing. *See, e.g., George J. Malone*, 2008 PSBCA LEXIS 21, *19–20 (Postal Serv. B.C.A. Sept. 2, 2008) (holding that "Appellant has not pointed to conduct by Respondent's officials that interfered or impeded his performance," thus breaching the covenant of good faith and fair dealing); *see also Samson J. Hypolite*, 2006 PSBCA LEXIS 12, *18–19 (Postal Serv. B.C.A. July 12, 2006) (holding that "Respondent's interference with Appellants perform-

ance" materially breached the covenant of good faith and fair dealing).

Since the PSBCA had jurisdiction to entertain all of Mr. Emiabata's claims arising out of the CO's administration of HCR 78653 and HCR 78640, all disputes arising from those contracts should have been litigated at that time. Although Mr. Emiabata seeks to distinguish the two claims by arguing that his claim in this Court is different from the claims made before the PSBCA because this claim is a contractual claim, the relief sought in both forums is identical. Because Mr. Emiabata's claim that the USPS breached the covenant of good faith and fair dealing arises from the same set of transactional facts as his appeals before the PSBCA, Mr. Emiabata is precluded from litigating such a claim in this Court by the doctrine of res judicata.

## IV. CONCLUSION

For the reasons set forth in this opinion, the Court hereby **GRANTS** Defendant's Motion for Summary Judgment. The Clerk is directed to **DISMISS** Plaintiff's Complaint.

**It is so ORDERED.**