# United States Court of Appeals
## For the First Circuit

No. 12-1618

WILLIAM RÍOS-PIÑEIRO,

Plaintiff, Appellant,

v.

UNITED STATES OF AMERICA,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Torruella, Lipez and Howard,
Circuit Judges.

Maricarmen Almodóvar Díaz, with whom Almodóvar Díaz Law Office
was on brief, for appellant.
Michael J. Elston, Special Assistant United States Attorney,
with whom Rosa Emilia Rodríguez Vélez, United States Attorney, was
on brief, for appellee.

April 15, 2013

**HOWARD, <u>Circuit Judge</u>**.  Plaintiff William Ríos-Piñeiro appeals the district court's grant of summary judgment in favor of the United States in this Federal Tort Claims Act ("FTCA") action. The United States Postal Service ("USPS") terminated Ríos's employment contract after concluding that he had stolen mail containing money.  Ríos sued the United States in the District Court of Puerto Rico over the events relating to that contract termination.  After careful review of the summary judgment record, we affirm.

## I. Background

We assess the record that was before the district court on the motion for summary judgment,[1] drawing all reasonable inferences in favor of the non-moving party, Ríos.  <u>See</u> <u>Roman</u> v. <u>Potter</u>, 604 F.3d 34, 38 (1st Cir. 2010).

Ríos was a contract employee with the USPS for over twenty-eight years, responsible for sorting mail and delivering it along an established route in Florida, Puerto Rico.  He was one of five letter carriers in the Florida Post Office.  In May 2006, Ríos had a falling out with carrier Mark Nieves over Nieves's work-related conduct.  Ríos began reporting Nieves's misdeeds to Postmaster Albert Gonzalez.  This led to confrontations between Nieves and Ríos, once nearly culminating in a fistfight.

---

[1] Included in this record are the factual findings of the Postal Service Board of Contract Appeals.  <u>See</u> <u>infra</u>, Sec. II.A.

-2-

In June 2006, Nieves reported to Lucydali Rivera, the Postal Inspector responsible for the Florida Post Office, that he had seen Ríos take mail from the "hot case" -- the container for misaddressed mail -- and remove money from an envelope. On the basis of this report, the Inspection Service coordinated an investigative operation designed to catch Ríos in the act of theft.

On July 12, 2006, postal inspectors prepared three test envelopes, each containing a greeting card, United States currency and fluorescent powder. The inspectors marked the bills and recorded their serial numbers, and sealed the envelopes. The envelopes contained destination and return addresses in the state of Florida, which would ordinarily lead to their placement in the hot case for proper delivery.

Rivera requested that Nieves meet her and other postal inspectors before going to work in the morning. At this meeting, they provided Nieves with the envelopes and asked him to place them around the Florida Post Office. The inspectors determined that Nieves should perform this task because they worried that their presence would arouse suspicion in the small office. Nieves drove from this meeting to the Post Office, with the inspectors following behind. Shortly after arriving, Nieves telephoned the inspectors to inform them that he had set the bait. In follow-up calls, he reported that the envelopes were not where he had placed them and that Ríos had left to purchase breakfast for some of the postal

employees. The postal inspectors decided to wait until after Ríos completed his delivery route to confront him about the missing envelopes.

Once Ríos had returned to the post office from his daily deliveries, inspectors summoned him into the postmaster's office. Once inside, the inspectors asked him to empty his pockets. He was in possession of several U.S. banknotes, including a $5 bill whose serial number matched a $5 bill from one of the envelopes and which bore the inspectors' mark. Screening with an ultraviolet light revealed that Ríos had fluorescent powder on his hands and the pocket area of his pants. The inspectors then explained to Ríos that they would take him to the men's bathroom to search him for additional money. Two male inspectors escorted him to the bathroom. They asked him to remove his shoes and lower his pants, and he complied. One of the inspectors pulled the band of Ríos's underwear away from his body and looked at his genital area. This search yielded no other evidence, and none of the envelopes or the greeting cards were ever found. Based on this incident, USPS terminated Ríos's contract. Postal inspectors subsequently persuaded local authorities to bring criminal charges against Ríos, which were all dismissed.

Ríos initiated an administrative appeal to the Postal Service Board of Contract Appeals ("PSBCA"), which convened a two-day evidentiary hearing to determine whether the USPS breached

Ríos's contract. Both parties had the opportunity to present witnesses and subject opposing witnesses to cross-examination. Ríos denied the allegation of theft, claiming that he had received the $5 bill from Nieves that morning while he was collecting money to purchase breakfast. According to Ríos, when he and Nieves shook hands that morning, additional powder transferred onto him. The PSBCA was unconvinced by this theory. Based on the evidence collected during the postal inspectors' investigation, the PSBCA determined that Ríos was in possession of the $5 bill and that the fluorescent powder on his hands and trousers "indicated that he was the person who opened at least one of the prepared envelopes." The PSBCA held that this serious breach of his employment contract justified the decision to terminate Ríos's contract. Ríos did not appeal this decision to the Federal Circuit.

Meanwhile, Ríos had initiated a FTCA suit against the United States for the actions of USPS employees on the date of the sting, alleging six torts. On the government's motion, a magistrate judge recommended dismissing three of the six claims and the district court adopted the magistrate's reasoning without any objection from Ríos.

The government then sought summary judgment on the remaining claims, which were for negligent supervision, invasion of privacy, and malicious prosecution. The government submitted a record containing, among other exhibits, the proceedings before the

PSBCA and its decision.  In response, Ríos requested that the court strike the PSBCA's factual findings from the record.  Declining to do so, the district court instead incorporated those findings, and granted judgment to the government.  In his appeal, Ríos pays particular attention to the district court's decision to give the PSBCA findings preclusive effect over factual matters.

## II. Discussion

Review of a grant of summary judgment is de novo.  Henry v. United Bank, 686 F.3d 50, 54 (1st Cir. 2012).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In this case, the existence or non-existence of factual disputes hinges upon whether the PSBCA's order precludes relitigating these issues in the district court.  "The applicability vel non of preclusion principles is a question of law."  Monarch Life Ins. Co. v. Ropes & Gray, 65 F.3d 973, 978 (1995).

A.      Collateral Estoppel

Collateral estoppel, or issue preclusion, is a doctrine of judicial economy that grants preclusive effect to final adjudications of fact or law in subsequent litigation.  See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979).  Its basic application is straightforward:  "When an issue of fact or law is actually litigated and determined by a valid and final judgment,

-6-

and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."  Mihos v. Swift, 358 F.3d 91, 101 (1st Cir. 2004) (quoting Restatement (Second) of Judgments § 27 (1982)).

As a threshold matter, we must decide whether collateral estoppel applies to the administrative decision of the PSBCA.  The Supreme Court has stated its preference for applying issue preclusion "to those determinations of administrative bodies that have attained finality."  Astoria Fed. Sav. & Loans Ass'n v. Solimino, 501 U.S. 104, 107 (1991). If the administrative agency "is acting in a judicial capacity . . . [and] the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose."  United States v. Utah Const. & Min. Co., 384 U.S. 394, 422 (1966);  see also Bath Iron Works Corp. v. Director, Office of Workers' Comp. Programs, U.S. Dep't of Labor, 125 F.3d 18, 21 (1st Cir. 1997) (granting preclusive effect to the factual findings of a state administrative agency).

We see no reason not to apply this general rule to the PSBCA.  Congress created the PSBCA as part of its comprehensive approach to resolving public contract disputes.  41 U.S.C. §§ 7101-7109.  The PSBCA, along with parallel boards in other government agencies, provides an alternative to the Federal Court of Claims

for adjudicating these disputes. Id. § 7104(b)(1). Its procedures, which include limited discovery and examination of witnesses at a hearing, are set forth in regulations, 39 C.F.R. § 955. Such an adjudicative scheme is sufficient to trigger the doctrine of collateral estoppel. Cf. Emiabata v. United States, 90 Fed. Cl. 22, 28 (2009) ("[C]ollateral estoppel may apply to decisions of a Board of Contract Appeals that are deemed final.").

Even if the PSBCA's factual findings may have preclusive effect as a general matter, however, we still must be satisfied that collateral estoppel applies in this specific instance. We look to the following four factors: 1) that both the prior and subsequent proceedings involved "the same issue of law or fact;" 2) that "the parties actually litigated" the issue in the prior proceeding; 3) that the prior proceeding "actually resolved the issue in a final and binding judgment"; and 4) that "its resolution of that issue of law or fact was essential to its judgment." Monarch Life Ins. Co., 65 F.3d at 978.

The factual issues before the PSBCA were identical to those raised in Ríos's FTCA suit, viz., the historical events of July 12, 2006. Not only did the administrative matter and the FTCA action address the same events, but both parties also presented the same factual narratives before the successive adjudicative bodies. The PSBCA rejected Ríos's theory that Nieves deceptively planted

-8-

the evidence on him, yet Ríos pressed the same factual claim before the district court.

Furthermore, the PSBCA actually resolved the issue with a final, binding judgment. It weighed the competing versions of events, and it deemed the government's version more persuasive. Ríos's failure to appeal this decision gave it finality. And the question of whether Ríos stole mail was essential to the PSBCA's holding. Though the ultimate legal issue in the administrative action involved Ríos's rights under his employment contract, the only way to determine the propriety of terminating his contract was by first deciding whether he had stolen mail. The PSBCA held: "Respondent has demonstrated that by stealing the contents of mail entrusted to him, Appellant breached his contract . . . ." The district court correctly concluded that the PSBCA's findings precluded relitigation of the factual issues in Ríos's FTCA suit.

B.      Review of Summary Judgment

The PSBCA's findings preclude any claim of factual dispute on the issue of theft. What is left is to apply the law to the uncontested facts to determine whether summary judgment was properly granted as to Ríos's FTCA claims for negligent supervision, malicious prosecution, and invasion of privacy by postal inspectors. We assess these claims under the law of Puerto Rico, as we have held that an FTCA claim "must be comparable to a cause of action against a private citizen recognized in the

jurisdiction where the tort occurred." Abreu v. United States, 468
F.3d 20, 23 (1st Cir. 2006) (quotations omitted).

### 1.    Malicious Prosecution

Under Puerto Rico law, the tort of malicious prosecution
includes four elements:  "1) that a criminal action was initiated
or instigated by the defendants; 2) that the criminal action
terminated in favor of plaintiff; 3) that defendants acted with
malice and without probable cause; and 4) that plaintiff suffered
damages."  Barros-Villahermosa v. United States, 642 F.3d 56, 58
(1st Cir. 2011) (quotations omitted).  The PSBCA's finding of theft
by Ríos is conclusive as to the third element.  At a minimum, the
Board's findings demonstrate that the postal inspectors had
probable cause to initiate a prosecution against Ríos.  Therefore,
the district court properly handled this claim.

### 2.    Negligent Supervision

In this appeal, Ríos states only that a cause of action
for negligent supervision exists under Puerto Rico law and cites
cases affirming that proposition.  He makes no developed argument,
however, about how the facts here support that cause of action.
The claim is therefore waived.  United States v. Zannino, 895 F.2d
1, 17 (1st Cir. 1990), ("[I]ssues averted to in a perfunctory
manner, unaccompanied by some effort at developed argumentation,
are deemed waived").

### 3. Invasion of Privacy

Ríos's invasion of privacy claim under the FTCA results from the body search that the postal inspectors conducted. The claim is based on the Puerto Rico Constitution, which states that "[t]he dignity of the human being is inviolable." Puerto Rico Const. Art. II, § 1. Likewise, article 2, section 8 guarantees every person "the right to the protection of law against abusive attacks on his honor, reputation and private or family life." Id. § 8. The Puerto Rico Supreme Court has held that the rights enshrined in these sections are enforceable "ex proprio vigore", Colón v. Romero Barceló, 12 P.R. Offic. Trans. 718 (1982). Therefore, "[a] claim for the invasion of privacy is actionable under Article II, §§ 1 and 8 of the Puerto Rico constitution," Mojica Escobar v. Roca, 926 F. Supp. 30, 34 (D.P.R. 1996), and the Puerto Rico Supreme Court has held that the "scope for a just interpretation [of invasion of privacy torts] is very wide." Cortes Portalatin v. Hau Colon, 3 P.R. Offic. Trans. 1019 (1975).

The government argues, in part, that there was no actionable invasion of Ríos's privacy because he consented to the search. Postal Inspector Angel Nieves's deposition, which Ríos himself submitted to the district court, contained the following statement about the bathroom search: "it was explained to him that we were going to be taking him to the restroom because we were going to do a search to make sure that he didn't have any more of

-11-

the money on him." Nieves again explained this to Ríos once they were in the bathroom. Ríos did not protest the search at that time, nor as it progressed. Instead, he complied with requests that he take off his shoes and lower his trousers. When the inspector pulled back Ríos's underwear, Ríos remained silent.

In his brief Ríos does not challenge the proposition that consent vitiates his invasion of privacy claim. Instead, he asserts only that "[I]t is an issue of fact that precludes summary disposition, whether Ríos, being searched while under arrest by postal inspectors, was free to oppose the instructions given by these law enforcement agents." We do not know whether Ríos disputes Nieve's description of events. Ríos's deposition, which he included in his opposition to the summary judgment and which may or may not cast a different light on the search, is in Spanish and therefore outside of the scope of our review. See Local Rule 30.0(e). Nor has Ríos ever attempted to rebut Nieves's testimony (which, we note again, he submitted to the district court) in his filings in the district court or before us. If his Spanish-language deposition counters Nieves's testimony, Ríos had ample opportunity to bring it to our attention. As there is no evidence in the record controverting that Ríos consented to the search, summary judgment was proper as to his invasion of privacy claim.

### III. Conclusion

For the foregoing reasons, we **<u>affirm</u>** the district court as to all claims.[2]

---

[2] Ríos also asks us to hold that the district court improperly dismissed his claim for lost wages "as a cognizable remedy for the tort actions submitted pursuant to the Federal Tort Claims Act." The government points out, and our review of the record confirms, that the district court did not issue such a ruling with respect to any of the counts that are relevant to this appeal. Moreover, Ríos did not object to the magistrate-judge's recommendation that the district court dismiss a claim based on intentional infliction of emotional distress, the only count in which the complaint referred to lost wages. "Only those issues fairly raised by the objections to the magistrate's report are subject to review in the district court and those not preserved by such objection are precluded from appeal." <u>School Union No. 37</u> v. <u>United Nat'l Ins. Co.</u>, 617 F.3d 554, 564 (1st Cir. 2010).