# United States Court of Appeals
## For the First Circuit

No. 20-1972

FELIX J. LAHENS,

Plaintiff, Appellant,

v.

AT&T MOBILITY PUERTO RICO, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Marcos E. López, U.S. Magistrate Judge]

Before

Howard, Chief Judge,
Thompson, Circuit Judge,
and Woodcock,* District Judge.

Anibal Lugo-Miranda for appellant.
Jose F. Benitez Mier, with whom Ricardo J. Casellas Santana
and O'Neill & Borges LLC were on brief, for appellee.

March 16, 2022

---

* Of the District of Maine, sitting by designation.

**WOODCOCK**, **District Judge**.  The Age Discrimination in Employment Act ("ADEA") and Americans with Disabilities Act ("ADA") prohibit an employer from discriminating against an employee based on his age or disability, respectively.  Plaintiff-appellant Felix Lahens alleges that his employer, AT&T Mobility ("AT&T"), terminated his employment because of his age and because he received a liver transplant.  We affirm the district court's entry of summary judgment in favor of AT&T.

## I.  Background

On review of a district court's entry of summary judgment, we view the record in the light most favorable to the non-moving party, Felix Lahens, consistent with record support.[1] Vélez-Ramírez v. Puerto Rico, 827 F.3d 154, 156 (1st Cir. 2016); Ahern v. Shinseki, 629 F.3d 49, 51 (1st Cir. 2010).

---

[1] The district court applied Local Rule 56(e), which permits the court to "disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment," D.P.R.R. 56(e), to exclude Lahens' version of the facts here because Lahens failed to properly contest AT&T's statement of material fact.  Accordingly our recitation does not include those additional, but excluded, facts.  Furthermore, Lahens has waived any argument that the district court improperly applied Local Rule 56, because he raised this argument for the first time in his reply brief.  United States v. Jurado-Nazario, 979 F.3d 60, 62 (1st Cir. 2020) ("[A]rguments raised for the first time in an appellate reply brief [are] ordinarily deemed waived." (alterations in Jurado-Nazario) (quoting United States v. Casey, 825 F.3d 1, 12 (1st Cir. 2016))).

## A.    The Parties

On March 4, 2013, at age fifty-seven, Felix Lahens began working at DIRECTV as a Sales Training Manager.  Lahens originally applied for a position as a Sales Training Specialist, for which he competed alongside Giancarlo Capelli.  However, based on his experience, DIRECTV instead hired Lahens as a higher-ranking Sales Training Manager, which came with a larger salary and greater benefits.  DIRECTV hired Capelli as a Sales Training Specialist. In May 2014, DIRECTV entered into a merger agreement with AT&T in which DIRECTV became a wholly owned subsidiary of AT&T; however, Lahens retained his position as Sales Training Manager.

As Sales Training Manager, Lahens was primarily responsible for developing, administering, organizing, and conducting employee training programs for DIRECTV's salesforce. In this position, Lahens also supervised the Sales Training Specialists, including Capelli and another employee, Wilfredo Lugo.  As an exempt employee, Sales Training Manager Lahens was not required to record the number of hours he worked, nor to clock-in and clock-out or use similar timekeeping methods.  While employed at AT&T, Lahens received periodic salary increases and the Company never reduced his compensation and employee benefits.[2]

---

[2] There is no evidence on the record that Lahens' position, compensation, or benefits changed when DIRECTV merged with AT&T in 2014.

Beginning in December 2013, Lahens was supervised by Senior Sales Manager, Madeline Cuestas. Upon Cuestas' resignation in April 2015, AT&T's Sales and Marketing Executive Director, Belkys Mata Mayor, temporarily supervised Lahens from April to May 2015. As a supervisor, Mata Mayor held staff meetings with her direct reports. When employees in Mata Mayor's organization were assigned to a special project, they were invited to attend the part of the staff meeting where the assigned project would be discussed.

In May 2015, AT&T's Senior Manager for Marketing and Planning, Natcha Rodríguez Colón, began supervising Lahens. Because Lahens no longer reported directly to Mata Mayor after Rodríguez Colón became his supervisor, Lahens stopped attending Mata Mayor's staff meetings in May 2015. Rodríguez Colón would attend Mata Mayor's meetings and could relay pertinent information to Mata Mayor regarding sales trainings. Even though Rodríguez Colón was his official supervisor, Lahens continued to communicate directly with Mata Mayor.

### B. Felix Lahens' Liver Transplant and Medical Leave

In August 2015, Lahens learned that he needed a liver transplant. After he applied for medical leave under Puerto Rico's Non-Occupational Temporary Disability Benefits Act (SINOT), AT&T granted Lahens medical leave from August 24, 2015, until August

30, 2016. Lahens underwent a successful liver transplant on January 29, 2016.

### C. Felix Lahens' Return from Medical Leave

On April 4, 2016, Lahens returned from medical leave and was reinstated as Sales Training Manager with the same compensation, benefits, and other terms and conditions of employment that he had prior to going on medical leave. On July 26, 2016, Lahens submitted a request for reasonable accommodation, asking for time off to attend medical appointments and checkups related to his liver transplant. The next day, DIRECTV's Human Resources Business Partner, Bárbara Bravo, informed Lahens that he did not need a reasonable accommodation because he could perform all essential functions of his job without one. As an exempt employee, Lahens had the flexibility to determine his daily and weekly work schedule and could accommodate his work schedule to attend medical appointments and checkups without prior authorization. At no point before or after his transplant was Lahens disciplined for violating any attendance rules or policies.

### D. The January 9, 2017, Meeting and Internal Complaint

In December 2016, Lahens presented the "Compass" program, which he believed would improve DIRECTV's current salesforce training program, to Mata Mayor and Rodríguez Colón. Lahens held a meeting on January 9, 2017, with his supervisees, Capelli and Lugo, to discuss 2017 sales training plans, including

his "Compass" program. During the meeting, Lahens asked Capelli and Lugo if he could include their names in his proposed presentation of the "Compass" program. Capelli and Lugo declined to endorse the proposed presentation because they had not participated in its creation and it did not include their input.

The participants at the meeting dispute what happened next. Capelli and Lugo said that Lahens slammed his laptop shut, used profanity, and left the room, allegations Lahens denied. On January 11, 2017, Capelli filed an internal complaint based on Lahens' conduct at the January 9, 2017, meeting. AT&T Mobility's Human Resources department ("HR") investigated the complaint and interviewed Capelli and Lugo. Capelli and Lugo told HR their version of how Lahens reacted after they informed him that they were uncomfortable adding their names to the "Compass" program.

On February 23, 2017, as part of the investigation related to Capelli's internal complaint, HR interviewed Lahens. During the interview, Lahens admitted that after Capelli and Lugo declined to include their names in the proposed presentation of the Compass Program the meeting "got heated." Lahens did not recall what he said while leaving the meeting but admitted that he "got a little bit excited" and that he confronted Capelli in an "excited tone, but not aggressive." After reviewing the investigation findings, Rodríguez Colón issued a written warning to Lahens on March 10, 2017, citing his unprofessional behavior

- 6 -

during the January 9 meeting with Capelli and Lugo. The written warning did not adversely impact Lahens' compensation, benefits, or any other term or condition of his employment.

### E. Felix Lahens' First Discrimination Complaint

On March 15, 2017, Lahens sent an e-mail to Angel Rijos, Senior Lead Investigator of AT&T's Asset Protection Department, voicing his concerns about the legality of including competitors' logos, ads, and promotional materials in DIRECTV's sales training materials. On March 21, 2017, Lahens filed an internal complaint against Rodríguez Colón alleging that she had retaliated against him for voicing his legal concerns. He also alleged that Rodríguez Colón issued him a written warning on March 10, 2017, because of his age and disability.

HR opened an investigation into Lahens' internal complaint conducted by Sandra Moreno, who did not know Lahens. On March 24, 2017, Moreno interviewed Lahens who complained that he felt underappreciated in his position after returning from his liver transplant, that he had been denied a reasonable accommodation, and that he felt he had been unjustly issued a written warning in retaliation for complaining of possible copyright law violations in DIRECTV's training materials.

Upon concluding its investigation, HR determined Lahens had not been disciplined as a result of illegal discrimination or retaliation but had instead been issued a written warning on March

10, 2017, for becoming disruptive and using profanity during a business meeting. Moreno thus concluded there was no evidence to substantiate the allegations in Lahens' internal complaint. Moreno communicated the results of the investigation to Lahens on May 18, 2017.

**F.    AT&T Mobility's Reorganization**

Prior to AT&T and DIRECTV's merger, DIRECTV hired London Consulting to perform an efficiency assessment of its operations. As part of the assessment, London Consulting recommended the elimination of certain positions, including the Sales Training Manager position.

Upon integrating AT&T and DIRECTV's operations, AT&T adopted London Consulting's recommendations for DIRECTV and decided that AT&T Mobility Retail Sales Consultants would sell DIRECTV services in addition to AT&T products and services. AT&T did not adopt DIRECTV's sales training program after the integration. As a result, AT&T decided there was no longer a need for an independent DIRECTV salesforce team to sell DIRECTV's services at distinct points of sale or door-to-door at the prospective clients' homes or offices. Consequently, AT&T implemented a reduction in force which eliminated DIRECTV's salesforce positions within Puerto Rico, effective December 2016. With the elimination of DIRECTV's sales force positions, there was no longer a need to develop, organize, or coordinate training

programs exclusively to increase DIRECTV sales in Puerto Rico. Furthermore, AT&T already had an internal training team responsible for developing, coordinating, and providing sales training programs to its pre-integration salesforce. Upon integration, this team, not the DIRECTV sales training team, would train AT&T's salesforce.

### G. AT&T's Reduction in Force

In July 2017, AT&T announced a surplus reduction in force ("RIF") as a result of these post-integration changes. As part of the RIF, AT&T designated a group of DIRECTV directors--the "Decisional Unit"--which, together with the AT&T Mobility HR Business Partner, Militza Piñero, would consider AT&T's post-integration needs to determine which positions would become redundant. The DIRECTV directors assigned to the Decisional Unit were Ayme Román Garcia, Mata Mayor, and Brenda Ponte Hernandez.

Because AT&T eliminated DIRECTV's salesforce, opted to no longer sell DIRECTV's prepaid services, consolidated AT&T and DIRECTV retail locations, and already had a team in place to train Retail Sales Consultants to sell DIRECTV's services, the Decisional Unit adopted London Consulting's recommendation to eliminate certain positions. Consequently, AT&T eliminated seven positions, including Lahens' Sales Training Manager position. Based on a HR note dated March 17, 2017, Lahens' position was on AT&T's list for surplus elimination as early as spring 2017. This

HR note forms one of the bases of Lahens' argument that AT&T's stated reason for his dismissal was a pretext.

## H.   Felix Lahens' Termination and Second Internal Complaint

On July 31, 2017, Lahens received a surplus notification letter from AT&T indicating that AT&T was eliminating his Sales Training Manager position as part of the RIF. AT&T notified Lahens that his last day of employment would be September 29, 2017, and that he would be eligible to receive severance benefits under the applicable severance plan if he signed and returned a General Release and Waiver.

On August 14, 2017, Lahens filed a second internal complaint alleging that AT&T's decision to terminate his employment was motivated by Mata Mayor's alleged practice of excluding Lahens because of his age and disability. HR investigated Lahens' complaint and interviewed Lahens about his allegations. On September 13, 2017, the complaint investigator, Eliza Pérez, contacted Lahens to inform him that the investigation was complete and revealed no evidence that AT&T eliminated his position because of his age. HR found that AT&T based its surplus decisions on categorical position elimination, not on age or any other protected category.

Following the devastation of Hurricane Maria in Puerto Rico, AT&T informed Lahens and other employees who were impacted by the RIF that AT&T was extending their last day of employment

- 10 -

from September 29, 2017, to December 30, 2017, and that they would continue to receive their full salary and benefits until that day, whether they reported to work or not. AT&T continued to pay Lahens his full compensation and benefits until December 30, 2017, when his employment termination became effective.

Finally, on March 1, 2019, well after Lahens' termination, Capelli, who had previously occupied the Sales Training Specialist position, was transferred to the Senior Training Mgr/Instructor position. The Senior Training Mgr/Instructor position is not the same as the Sales Training Manager position at AT&T and lacks supervisory responsibilities.

## I.    The Discrimination Complaint

On March 27, 2018, Lahens filed a complaint with the Antidiscrimination Unit of the Puerto Rico Department of Labor and Human Resources ("ADU") alleging that AT&T discriminated against him due to his age and disability. Lahens thereafter received a right to sue letter on October 2, 2019, and filed a complaint in the United States District Court for the District of Puerto Rico on October 16, 2018. In the complaint Lahens alleged disability discrimination under the ADA and age discrimination under the ADEA.[3]

---

[3] Lahens also proceeded with a retaliation claim under Title VII of the Civil Rights Act of 1964 and with alleged violations of 1 L.P.R.A. § 501 (Law 44); 29 L.P.R.A. § 146 (Law 100); 29 L.P.R.A.

- 11 -

On September 8, 2020, the district court[4] granted summary judgment in favor of AT&T and dismissed the complaint. Lahens v. AT&T Mobility P.R., Inc., No. 18-1776(MEL), 2020 U.S. Dist. LEXIS 163861 (D.P.R. Sept. 8, 2020). The district court concluded that all allegedly discriminatory acts predating May 31, 2017, were time-barred.[5] Id. at *31-33. The district court thereafter concluded that Lahens failed to make out prima facie cases of discrimination under either the ADA or ADEA and failed to show that AT&T's stated reason for his termination was pretextual. Id. at *38-59. The district court dismissed with prejudice Lahens' federal claims (ADA, ADEA, and Title VII retaliation) and their respective state counterparts (Puerto Rico Laws 44, 100, and 115). Id. at *46, 59-60, 62-63, 65. The district court declined to exercise supplemental jurisdiction over the Puerto Rico Article 1802 and Law 80 claims and dismissed them without prejudice. Id. at 66.

---

§ 185a (Law 80); 28 L.P.R.A. § 194 (Law 115); and Article 1802 of the Puerto Rico Civil Code.

[4] On March 13, 2019, the parties filed a consent to proceed before the Magistrate Judge pursuant to 28 U.S.C. § 636(c).

[5] The district court found that Lahens filed an administrative charge with the ADU on March 27, 2018, and that the 300-day period under 42 U.S.C. § 2000e-5(e)(1) allowed the capture of events from May 31, 2017, onward. Id. at 31-32

In addition, the district court also found there was "[n]o evidence or argument . . . proffered to demonstrate that the continuing violation doctrine applie[d] to this case." Id. at *31-36. Lahens has not challenged on appeal this part of the district court's ruling.

- 12 -

On September 25, 2020, AT&T filed a motion for reconsideration requesting that the district court dismiss all claims with prejudice. On December 17, 2020, the district court granted AT&T's motion for reconsideration and dismissed with prejudice the Puerto Rico Article 1802 and Law 80 claims. Lahens v. AT&T Mobility P.R., Inc., No. 18-1776(MEL), 2020 U.S. Dist. LEXIS 238974 (D.P.R. Dec. 17, 2020). Lahens appeals the district court's grant of summary judgment, and district court's grant of AT&T's motion for reconsideration on Lahens' Law 80 and Article 1802 claims.

## II.  Discussion

On a motion for summary judgment, the movant must demonstrate that "there is no genuine dispute as to any material fact" and is therefore "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Murray v. Kindred Nursing Ctrs. W. LLC, 789 F.3d 20, 25 (1st Cir. 2015). On appeal, we review a district court's grant of summary judgment de novo, "drawing all reasonable inferences in favor of the non-moving party while ignoring conclusory allegations, improbable inferences, and unsupported speculation." Pruco Life Ins. Co. v. Wilmington Trust Co., 721 F.3d 1, 6-7 (1st Cir. 2013) (internal quotation marks omitted) (quoting Sutliffe v. Epping Sch. Dist., 584 F.3d 314, 325 (1st Cir. 2009)). We may affirm the grant of summary judgment "on any basis apparent in the record." Id. at 7.

- 13 -

## A. Time-Barred Claims

On appeal, Lahens did not challenge the district court's conclusion that it could only consider allegedly discriminatory acts post-dating May 31, 2017, in its summary judgment analysis and at oral argument, Lahens' counsel confirmed that Lahens could not recover for any discrimination occurring before May 31, 2017. See Macaulay v. Anas, 321 F.3d 45, 49 (1st Cir. 2003) ("[P]arties are bound by their attorneys' representations . . . and courts are entitled to take those representations at face value." (internal citation omitted)). Lahens therefore has waived any argument that his pre-May 31, 2017, claims are not time-barred. See United States v. Mayendía-Blanco, 905 F.3d 26, 32 (1st Cir. 2018) ("[I]t is a well-settled principle that arguments not raised by a party in its opening brief are waived." (citing Landrau-Romero v. Banco Popular de P.R., 212 F.3d 607, 616 (1st Cir. 2000))).

Despite this concession, on appeal, Lahens identifies the following events as evidence of age and disability discrimination: (1) his effective demotion from Sales Training Manager to Sales Training Specialist upon his return from medical leave in April 2016, after which he allegedly no longer supervised Capelli and Lugo; (2) Mata Mayor's alleged refusal to supervise Lahens after he returned from medical leave because of his age and disability; (3) Mata Mayor's exclusion of Lahens from her supervisory meetings due to his age and disability, beginning in

- 14 -

2015 when Lahens became aware of his medical condition; (4) AT&T's refusal to grant a reasonable accommodation upon Lahens' return from medical leave in 2016; (5) Mata Mayor's alleged decision to fire Lahens which he claims occurred as early as March 2017; (6) Mata Mayor's alleged strategic promotion of Capelli to protect him from the RIF, thereby bypassing Lahens for the job; and (7) Rodríguez Colón's alleged retaliation against Lahens for voicing his concerns about copyright issues at AT&T. Each of these claims is time-barred because the underlying conduct or events occurred prior to May 31, 2017.

The elimination of the time-barred acts leaves as Lahens' only potentially viable claim his contention that he was terminated because of his age and disability. On July 31, 2017, AT&T notified Lahens that his position was to be eliminated effective September 29, 2017, although he was not officially terminated until December 30, 2017, meaning that his termination took place within the statute of limitations.

## B. ADEA Claim

Pursuant to the ADEA, an employer may not "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000) (quoting 29 U.S.C. § 623(a)(1)). The plaintiff bears the "burden of proving that his

- 15 -

years were the determinative factor in his discharge, that is, that he would not have been fired but for his age." Dávila v. Corporación de P.R. Para La Difusión Pública, 498 F.3d 9, 15 (1st Cir. 2007) (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 823 (1st Cir. 1991)). When "an employee lacks direct evidence that the employer's actions were motivated by age animus, the McDonnell Douglas burden-shifting framework" applies. Suarez, 229 F.3d at 53 (citing Mesnick, 950 F.2d at 823).

Under step-one of this framework, the plaintiff must establish a prima facie case of age discrimination. Mesnick, 950 F.2d at 823 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). To do so, the plaintiff must prove: "(i) he was at least forty years old at the time of his termination; (ii) he was meeting the employer's legitimate performance expectations; (iii) he was terminated from his employment; and (iv) 'the employer did not treat age neutrally or that younger persons were retained in the same position.'" Zampierollo-Rheinfeldt v. Ingersoll-Rand de P.R., Inc., 999 F.3d 37, 50 (1st Cir. 2021) (quoting LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 842 (1st Cir. 1993)). The plaintiff's prima facie burden is "not onerous." Mesnick, 950 F.2d at 823 (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)).

The burden then shifts to the employer to show "a legitimate, non-discriminatory reason" for the adverse employment

- 16 -

action.  Zampierollo-Rheinfeldt, 999 F.3d at 51 (internal quotation marks omitted) (quoting Theidon v. Harvard Univ., 948 F.3d 477, 495 (1st Cir. 2020)).  Assuming the employer meets this burden of production, the burden of persuasion shifts back to the employee "to show, by a preponderance of the evidence, that the reason offered by the employer is merely a pretext and the real motivation for the adverse job action was age discrimination." Velázquez-Fernández v. NCE Foods, Inc., 476 F.3d 6, 11 (1st Cir. 2007) (citing Woodman v. Haemonetics Corp., 51 F.3d 1087, 1091-92 (1st Cir. 1995)).

We conclude that Lahens has failed to establish a triable issue of fact on his ADEA claim.  Lahens may have met the "not onerous" burden of showing a prima facie case of age discrimination because five out of seven employees terminated in the RIF were at least forty years old.  See Zampierollo-Rheinfeldt, 999 F.3d at 57 (concluding that summary judgment was inappropriate where three out of four employees terminated in a RIF were at least forty years old and there was direct evidence of discrimination); but see LeBlanc, 6 F.3d at 844 (holding that the plaintiff did not make out a prima facie age discrimination case where two out of three employees terminated in a RIF were members of a protected class). But we need not decide this issue because Lahens did not demonstrate that AT&T's stated reason for his termination was a pretext.

### i. Pretext

When analyzing pretext under the ADEA we "focus . . . on the perception of the decisionmaker." Mesnick, 950 F.2d at 824 (quoting Gray v. New England Tel. & Tel. Co., 792 F.2d 251, 256 (1st Cir. 1986)). In other words, we assess "whether the employer believed its stated reason [for termination] to be credible." Id. The plaintiff must therefore "elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive: age discrimination." Id. (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 9 (1st Cir. 1990)). A plaintiff may establish pretext "by showing 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions' in the employer's offered reasons for the termination that a 'reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'" Bonefont-Igaravidez v. Int'l Shipping Corp., 659 F.3d 120, 124 (1st Cir. 2011) (quoting Gómez-González v. Rural Opportunities, Inc., 626 F.3d 654, 662-63 (1st Cir. 2010)).

To show pretext, Lahens points to a HR personnel entry dated March 17, 2017, referencing a meeting between members of AT&T's HR Department and AT&T's legal team where they discussed Lahens' March 17, 2017, email to Rijos about potential copyright

- 18 -

violations in the Company's training materials. This HR note states that Lahens' position had been earmarked for elimination in the RIF, which he argues is evidence that AT&T's justification for terminating his position was merely pretextual. Lahens further argues pretext based on allegations that Mata Mayor "distanced herself from [him]," excluded him from upper management staff meetings, while including Capelli in those meetings, and saved Capelli's position from termination.

We cannot consider these allegations in our analysis on this point. Arguments that Mata Mayor distanced herself from Lahens, excluded him from meetings, and saved Capelli's position from termination are time-barred because the alleged conduct occurred prior to May 31, 2017.

Lahens' only remaining potentially viable claim—that he was terminated because of his age—is without merit as none of the facts alleged could lead a reasonable factfinder to conclude that the RIF was not only a sham, but a sham designed to cover up discrimination. From our reading of the record, DIRECTV contemplated reducing its operations as early as 2015, when it retained London Consulting to perform an efficiency assessment of its operations, which AT&T later adopted in the merger. London Consulting thereafter recommended that DIRECTV, and later, AT&T, eliminate the Sales Training Manager position nationwide. This recommendation was based on how AT&T would integrate DIRECTV's

services. When AT&T and DIRECTV merged, AT&T eliminated the DIRECTV sales training program but retained its own sales team. The Decisional Unit responsible for making final RIF decisions, which included Mata Mayor and several other directors,[6] thereafter adopted London Consulting's recommendation to eliminate multiple positions, including Lahens' position.

Importantly, the Decisional Unit acted pursuant to London Consulting's recommendations. There is nothing in the record suggesting that Lahens' termination was anything but a legitimate business decision consistent with the recommendations of an outside consultant. See Dunn v. Trs. of Bos., 761 F.3d 63, 71-72 (1st Cir. 2014)(stating that "in deciding which employees to lay off, an employer can 'determine which of [them] would best meet its ongoing business needs,' including by considering their 'particular expertise'" (quoting Sullivan v. Liberty Mut. Ins. Co., 825 N.E.2d 522, 538 (Mass. 2005))). While Lahens may perceive

---

[6] Mata Mayor was a member of the Decisional Unit, however, Lahens fails to present evidence that she was in charge of the Decision Unit, or that it was solely her decision to terminate his position. See Bennett v. Saint-Gobain Corp., 507 F.3d 23, 31 (1st Cir. 2007) ("When assessing a claim of pretext in an employment discrimination case, an inquiring court must focus on the motivations and perceptions of the actual decisionmaker." (citing Dávila, 498 F.3d at 16)). Nor does Lahens allege that other members of the Decisional Unit were biased against him in any way. See id. (holding that the termination of an employee was not pretextual when there was no evidence of complicity between the actual decisionmaker and another supervisor shown to have discriminatory animus).

the result as "unfair," it is well established that we "may not sit as super personnel departments, assessing the merits--or even the rationality--of employers' nondiscriminatory business decisions." Mesnick, 950 F.2d at 825 (citing Furnco Const. Corp. v. Waters, 438 U.S. 567, 578 (1978)). The record reflects non-pretextual grounds for a reasoned business decision, and in following London Consulting's recommendations, the record does not support the conclusion that the Decisional Unit terminated Lahens for anything other than credible business justifications. See Bennett v. Saint-Gobain Corp., 507 F.3d 23, 31 (1st Cir. 2007) ("[T]he plaintiff must show that the decisionmaker did not believe in the accuracy of the reason given.").

Nor is the March 17, 2017, HR note suggesting that AT&T decided to terminate Lahens' position as early as March 2017 of "such strength and quality as to permit a reasonable finding that the . . . [termination] was obviously or manifestly unsupported." Ruiz v. Posadas de San Juan Assocs., 124 F.3d 243, 248 (1st Cir. 1997) (alterations and emphasis in Ruiz) (quoting Brown v. Trs. of Bos. Univ., 891 F.2d 337, 346 (1st Cir. 1989)). The March 2017 HR note states: "Ana then brought up as an FYI that [Lahens] is on the list for an upcoming surplus because his position is being eliminated. Zahira stated that at this time that [we] should proceed as business as usual." This statement makes no reference to Lahens' age and is consistent with other evidence on the record

- 21 -

that Lahens' position was eliminated because of the post-integration surplus.[7]  Looking at the March 2017 HR note, no reasonable juror would be able to conclude that Lahens was terminated because of his age and not because of the RIF.

What is more, AT&T implemented the RIF evenhandedly and eliminated surplus positions without regard to the age of any employee.  Along with Lahens' position, AT&T eliminated the following positions: Associate Tech Network Services (age 39), Lead Public Relations Manager (age 44), Post-Venta Prepago Coordinator (age 40), Sales Merchandise Supervisor (age 40), and Trade Marketing Specialist (age 39).  All these individuals were younger than Lahens (and two were under the ADEA's forty-year-old threshold), which further confirms that AT&T did not base RIF decisions on age and Lahens was not singled out for discriminatory reasons.  See Brader v. Biogen Inc., 983 F.3d 39, 57 (1st Cir. 2020) (holding that evidence that the employer also terminated other employees as part of a reduction in force and new business strategy weighs against a finding of pretext); Suarez, 229 F.3d at 55 (concluding that plaintiff had not alleged discrimination where "changes were administered even-handedly" to similarly situated

---

[7] This note further contradicts Lahens' argument that it was Mata Mayor's decision, in particular, to terminate him as early as March 2017.  The note makes no reference to Mata Mayor's involvement in the surplus decision.

individuals).  Nor is there any suggestion that Lahens was offered a different severance package than other terminated employees.

The district court correctly determined that there was no genuine dispute that AT&T's non-discriminatory justification for terminating Lahens was not pretextual.

### C.  ADA Claim

Lahens' ADA claim fails for similar reasons.[8]  To succeed in an ADA claim absent direct evidence of discrimination, a plaintiff must make out a prima facie case of disability discrimination and, under the McDonnell Douglas burden shifting framework, show that the employer's non-discriminatory reason for dismissal was pretextual.  Ramos-Echevarría v. Pichis, Inc., 659 F.3d 182, 186-87 (1st Cir. 2011).  Raising the same arguments he brought in his ADEA claim, Lahens fails to present evidence that raises a genuine dispute as to whether the RIF was merely a pretext for dismissing him because of his liver transplant.  We affirm the district court's grant of summary judgment on Lahens' ADA claim for the same reasons we affirm the district court's grant of summary judgment on his ADEA claim: the record simply does not support his disability discrimination claim.

---

[8] All of the facts underpinning Lahens' ADA claim, all but his termination, that is, are time-barred: Lahens made his request for reasonable accommodation on July 26, 2016, and was denied on July 27, 2016.  Both the request and denial predated May 31, 2017.

- 23 -

**D. Commonwealth Law Claims**

Lahens argues that the district court erred in dismissing his Puerto Rico law claims with prejudice. At oral argument Lahens stated that a favorable appellate outcome would necessarily revive his Commonwealth claims that the district court dismissed with prejudice in its order granting summary judgment and its order granting AT&T's motion for reconsideration. We disagree.

Law 44 and Law 100 are the Puerto Rico law analogues of the ADA and ADEA, respectively, and require the same elements of proof. See, e.g., Torres v. House of Representatives of the Commonwealth of P.R., 858 F. Supp.2d 172, 194 (D.P.R. 2012) ("[Law 44] was modeled after the ADA. It was intended to harmonize Puerto Rico law with the federal statutory provisions of the ADA. Thus, the elements of proof for a claim under Law 44 are essentially the same as for a claim under the ADA." (internal citations omitted)); Varela Teron v. Banco Santander de P.R., 257 F. Supp. 2d 454, 462 (D.P.R. 2003) ("Law No. 100 is the Puerto Rico equivalent of the federal ADEA."). To the extent that Lahens has failed to make out valid ADA and ADEA claims, he similarly cannot succeed on his Law 44 and Law 100 claims.

Our analysis of Lahens' ADA and ADEA claims similarly dispenses with his Law 115 claim, which is the Puerto Rico equivalent of Title VII's antiretaliation provision. See Wirshing

v. <u>Banco Santander de P.R.</u>, 254 F. Supp. 3d 271, 277 (D.P.R. 2015). Because Lahens failed to meet his burden of showing that AT&T's stated reason for his dismissal was pretextual he cannot successfully allege that he was retaliated against in violation of Law 115. See <u>Salgado-Candelario</u> v. <u>Ericsson Caribbean, Inc.</u>, 614 F. Supp. 2d 151, 177 (D.P.R. 2008) ("Inasmuch as plaintiff has failed to make [a showing that the alleged reason for her termination was a pretext], plaintiff's retaliation claim under Law 115 fails.").

Similarly, under Law 80, Puerto Rico's wrongful discharge statute, a plaintiff who cannot meet his burden to show pretext under the <u>McDonnell Douglas</u> framework cannot make out a claim for wrongful discharge under Law 80 because the employer has "good cause" for the termination. See <u>Acevedo</u> v. <u>Stericycle of P.R., Inc.</u>, No. 19-1652 (JAG), 2020 U.S. Dist. LEXIS 39720, at *12 (D.P.R. Mar. 6, 2020) ("[A]n employer's legitimate, nondiscriminatory reason proffered to sustain its burden under the <u>McDonnell Douglas</u> framework constitute[s] good cause under Law No. 80." (citing <u>Sanchez Borgos</u> v. <u>Venegas Constr. Corp.</u>, No. 07-1592(SEC), 2009 U.S. Dist. LEXIS 28180, at *20 (D.P.R. Mar. 31, 2009))); <u>Sanchez Borgos</u>, 2009 U.S. Dist. LEXIS 28180, at *20 ("These economic reasons [resulting in a reduction in force and a reduction in operations] are understandable, and constitute good cause both under ADEA, Law 115, and Law 80.").

Given the outcome of this appeal, our analysis above disposes with Lahens' Law 80 claim.

Finally, to the extent that Lahens appeals his Article 1802 claim, we deem it waived. Unlike the Law 44, 80, 100, and 115 claims, the district court's dismissal with prejudice of the Article 1802 claim did not rest on the coterminous merits of the federal claims. Instead, the district court ruled that Lahens could not proceed with an Article 1802 claim grounded on the same facts underpinning his statutory employment claims and, therefore, the statutory claims superseded his Article 1802 claim. On this point, Lahens may not rely on appeal on the coterminous federal statutory employment arguments because the issues presented by the Article 1802 claim are not coterminous with the federal issues.

Lahens failed to mention a basis for challenging the district court's ruling that the employment statutes superseded his Article 1802 claim. Specifically, Lahens provides no supporting argument that the district court improperly barred his Article 1802 claim or that AT&T committed tortious conduct separate from his employment claims and therefore waives this issue on appeal. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (explaining that it is a "settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

**III. Conclusion**

Affirmed. Each party is to bear its own litigation costs.