# United States Court of Appeals
## For the First Circuit

No. 22-1696

BONNIE DIXON-TRIBOU,

Plaintiff, Appellant,

v.

DENIS RICHARD MCDONOUGH,
Secretary, U.S. Department of Veterans Affairs,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Nancy Torresen, U.S. District Judge]

Before

Kayatta, Selya, and Gelpí,
Circuit Judges.

Robert F. Stone and Law Office of Robert F. Stone on brief
for appellant.
Darcie N. McElwee, United States Attorney, and James D.
Concannon, Assistant United States Attorney, on brief for
appellee.

November 14, 2023

**GELPÍ**, **Circuit Judge**.    Plaintiff-Appellant Bonnie Dixon-Tribou ("Dixon") was formerly employed by Defendant-Appellee, the U.S. Department of Veterans Affairs ("VA"), as a nurse.  Following her removal from federal service in November 2016, Dixon brought suit against the VA, alleging disability discrimination, among other claims.  Dixon appeals the district court's decision granting the VA's motion for summary judgment and denying her like motion.  For the reasons described herein, we affirm.

## I. Background

When reviewing a district court's entry of summary judgment, we recite the facts in the light most favorable to the nonmovant -- here, Dixon -- "consistent with record support." Lahens v. AT&T Mobility P.R., Inc., 28 F.4th 325, 328 (1st Cir. 2022) (citations omitted).  We are careful, however, to omit from our recitation those facts that the district court deemed excluded for Dixon's failure to comply with Local Rule 56(f).[1]  See id. at

---

[1] Despite our prior urging to comply with local anti-ferret rules at summary judgment, see, e.g., López-Hernández v. Terumo P.R. LLC, 64 F.4th 22, 25-27 (1st Cir. 2023), we are once again faced with a litigant who failed to support her asserted facts with appropriate citations to the record.  See Dixon-Tribou v. McDonough, 616 F. Supp. 3d 38, 43 n.2 (D. Me. 2022).  Accordingly, the district court struck said facts for violating Local Rule 56(f).  Id.  The district court also noted that, because Dixon filed no response to the VA's proposed additional facts, the VA's additional facts were admitted for purposes of deciding Dixon's summary judgment motion.  Id.  Our recitation of the facts accounts

328 n.1 (omitting from discussion on appeal facts that the district court excluded pursuant to Local Rule 56(e)).  Additionally, because the extensive factual history is thoroughly detailed in the district court's opinion, see Dixon-Tribou, 616 F. Supp. 3d at 43-51, we recite only the facts needed for purposes of the present appeal.  See Dukes Bridge LLC v. Beinhocker, 856 F.3d 186, 187 (1st Cir. 2017).

## A. Dixon's Employment with the VA

Dixon began working for the VA as a floor nurse at the Togus, Maine VA Medical Center ("Togus") in 2006.  In 2007, a patient injured Dixon, and she was thereafter assigned temporary light duties.  In the latter part of 2008, treatment for Dixon's work-related injury revealed that she had multiple sclerosis ("MS").  One of the many symptoms of MS is heat intolerance, which results in fatigue after exposure to elevated temperatures.  Dixon felt that her light-duties restriction was not being honored in her role as a floor nurse, so when offered a role in the Quality Management Department, she accepted.

In January 2015, the VA reassigned Dixon to the Patient Care Services Department ("Non-VA Care Department"), where she

---

for the district court's decisions -- decisions that Dixon does not challenge on appeal.

Given that the failure to heed local rules at summary judgment harms litigants and creates additional work for the district court, see id. at 51 n.11, we continue to stress the importance of compliance.

processed referrals for patients to seek care outside of the VA system. Dixon first began experiencing issues with the temperature of her work environment shortly after she moved to her new office. On July 8, 2015, she contacted Dustin Cochran ("Cochran"), Togus's Reasonable Accommodation Coordinator, about the temperature issues. Dixon provided Cochran with a letter from her doctor, Dr. Paul Muscat, which stated that, as a result of Dixon's "long-standing [MS]," she was "very sensitive to even moderately elevated temperatures." The letter stated that she "need[ed] a work environment in which higher temperature [was] not a problem" and asked the VA to "make every effort to accommodate this requirement in any way that [it saw] fit." The VA granted Dixon's reasonable accommodation request on July 20, 2015, and arranged to move her physical workspace to another office (room 218E) and to supply her new room with an air conditioner, all of which the VA implemented a few weeks later.

Following Dixon's move to room 218E, Dixon reported continued temperature control issues, as well as interpersonal conflicts with her officemates over the temperature of the space. Then, on March 4, 2016, Dr. Muscat submitted a second reasonable accommodation request to Cochran on Dixon's behalf. Dr. Muscat requested that Dixon be allowed to telework to enable her to take medication, which would relieve her pain symptoms, and to help meet Dixon's existing reasonable accommodation for temperature

- 4 -

control.  After receiving the request, Cochran emailed Dr. Ray Lash seeking his medical opinion on the accommodation request. Dr. Lash responded that he "believe[d] there [wa]s some degree of potential for improvement in her function with strict management of temperature control and work conditions" and that "one could make a reasonable case to consider a trial of strict home temperature control as a means of managing her symptoms and ability to function in her work."  Per Cochran, he had a follow up conversation with Dr. Lash where it was decided that "a reasonable trial would be a [six]-month period in which [Dixon] could telework up to two days a week based on her symptoms."  On March 28, 2016, the VA approved Dixon's second accommodation request -- insofar as she was permitted to telework two days per week -- and committed to providing her a new workspace that met all of her needs.  By late April 2016, Dixon was teleworking per her accommodation and had a new private office located in Quarters 32.

Then, in summer 2016, Corey Vail ("Vail"), Dixon's then-supervisor, received several reports from employees that Dixon was in the community garden during work hours.  An internal review of her computer revealed that Dixon was logged off of her work computer for more than two hours per day on twenty-eight separate occasions during a five-month period.  On September 21, 2016, Vail proposed Dixon's removal from federal service for "failure to put forth an honest effort in the performance of [her] duties."  Dixon

then submitted a third reasonable accommodation request on September 27, 2016, seeking full-time telework. On October 26, 2016, Dixon met with Alan Lane, another Reasonable Accommodations Coordinator, to discuss her request. Following their conversation, Jonathan Meserve, Director of Human Resources, sent Dixon a letter proposing an accommodation and seeking feedback. On November 3, 2016, however, the VA informed Dixon that she was removed from federal service, effective November 12, 2016.

On January 26, 2017, Dixon applied for disability retirement with the U.S. Office of Personnel Management ("OPM") pursuant to the Federal Employees Retirement System ("FERS"), claiming that the VA removed her from federal service due to her disability. After initially denying her application, OPM granted Dixon disability retirement in May 2019.

### B. Dixon's Administrative Complaints

On March 17, 2016, while still employed with the VA, Dixon began the administrative process for filing a discrimination claim by contacting a VA Equal Employment Opportunity Commission ("EEOC") counselor. Then, on June 22, 2016, Dixon filed a formal complaint of employment discrimination, which the VA's Office of Resolution Management ("ORM") partially accepted for investigation on August 22, 2016. Specifically, ORM agreed to investigate the following: (1) the VA's alleged failure to comply with Dixon's reasonable accommodation for temperature control, (2) the VA's

alleged denial of her March 2016 request for full-time telework, and (3) the VA's increases in Dixon's workload from May 2016 to July 2016. Approximately a month after ORM accepted Dixon's claims for investigation, the VA proposed her removal from federal service.

After her removal, on January 26, 2017, Dixon moved to amend her formal discrimination complaint to include a promotion that she did not receive in February 2014, her transfer to the Non-VA Care Department in January 2015, and her removal from federal service in November 2016. About a month later, ORM denied Dixon's amendment request, explaining that her first and third proposed additional claims could proceed as a separate complaint but that her second claim was untimely and thus dismissed because she failed to contact an EEOC counselor within forty-five days of her transfer. On June 6, 2017, Dixon filed a second formal complaint of discrimination based on: (1) her non-promotion in 2014, (2) the VA's failure to accommodate her disability, and (3) her 2016 removal from service -- all of which were accepted for investigation by ORM. ORM concluded both of its investigations by October 24, 2017, and the complaints proceeded to a hearing in front of an EEOC administrative law judge. On August 1, 2019, the EEOC administrative law judge granted the VA's motion for summary

judgment, which became final on August 6, 2019, when the VA accepted the decision and issued its final agency decision.

### C. Proceedings Before the District Court

Dixon filed the underlying complaint on November 8, 2019, in the United States District Court for the District of Massachusetts, raising the following claims: (1) disability discrimination under the Rehabilitation Act ("RA"); (2) hostile work environment under the RA and Americans with Disabilities Act; (3) retaliation in violation of Title VII; and (4) failure to accommodate under the RA. The case was transferred to the United States District Court for the District of Maine in October 2020. There, during a Local Rule 56(h) conference, Dixon clarified that all of her claims were based on the RA, not Title VII. Both parties moved for summary judgment in February 2022.

On July 13, 2022, in a very thorough opinion, the district court granted summary judgment in favor of the VA on all counts and denied Dixon's like motion. Dixon-Tribou, 616 F. Supp. 3d at 63. In reaching said conclusion, the district court found that, even if Dixon had met the prima facie burden of establishing her disability discrimination and retaliation claims, Dixon failed to offer evidence from which a reasonable juror could find that the VA's nondiscriminatory reasons for its actions were pretextual. Id. at 57-58. As to Dixon's hostile work environment claim, the district court concluded that Dixon failed to present

evidence establishing that the conduct she endured was "sufficiently severe or pervasive to alter the conditions of her employment" and that she failed to "offer[] any evidence that any harassment that she suffered occurred as a result of her disability." Id. at 60-61. Finally, as to Dixon's failure to accommodate claim, the district court concluded that "no reasonable juror could find that the VA failed to provide for a reasonable accommodation," despite the occasional shortcomings in achieving temperature control. Id. at 61-62. After entry of summary judgment in favor of the VA, Dixon appealed.

## II. Standard of Review

We review a district court's order granting summary judgment de novo. Lahens, 28 F.4th at 333. To prevail at summary judgment, a movant "must demonstrate that 'there is no genuine dispute as to any material fact' and [that they are] 'entitled to judgment as a matter of law.'" Id. (quoting Fed. R. Civ. P. 56(a)). The standard remains the same when the district court is faced with cross-motions for summary judgment. See Dusel v. Factory Mut. Ins. Co., 52 F.4th 495, 503 (1st Cir. 2022) (citation omitted). While we must consider the record and the reasonable inferences drawn therefrom in the light most favorable to the nonmovant, we need not credit "conclusory allegations, improbable inferences, and unsupported speculation." Lahens, 28 F.4th at 333

(quoting Pruco Life Ins. Co. v. Wilmington Tr. Co., 721 F.3d 1, 6-7 (1st Cir. 2013)).

### III. Analysis

At the outset, we note that Dixon's challenges on appeal differ from our typical summary judgment review. With one exception, which we ultimately reject, Dixon does not point to factual disputes precluding summary judgment. Nor does she directly take issue with the district court's conclusion that the VA was entitled to summary judgment on each of her four claims. Instead, Dixon argues that the district court lacked jurisdiction at summary judgment to review the facts underlying her claims, that the district court should have precluded the VA from raising certain arguments on appeal, and that the district court improperly resolved a factual dispute at summary judgment and overlooked specific pieces of evidence in reaching its decision. Although Dixon's briefing is not a beacon of clarity, we do our best to address the claims raised, as we understand them. We begin with her argument that the district court lacked jurisdiction.

### A. Jurisdiction Claim

Dixon devotes most of her briefing to arguing that OPM's disability retirement decision is "final," "conclusive," and "not subject to review," meaning, per Dixon, that the district court lacked jurisdiction to review the facts related to OPM's disability

determination at summary judgment.[2]  Dixon grounds her argument in 5 U.S.C. § 8461(d), which states in part:  "The Office shall determine questions of disability and dependency arising under the provisions of this chapter administered by the Office.  Except to the extent provided under subsection (e), the decisions of the Office concerning these matters are final and conclusive and are not subject to review."[3]  Setting aside for a moment the question of what OPM actually decided when it granted her disability retirement, Dixon's jurisdictional argument is foreclosed by the plain text of the statute.  "[A]rising under . . . this chapter," as used in Section 8461(d), clearly refers to Chapter 84 of Title 5 of the United States Code, entitled "Federal Employees' Retirement System," where the statute at issue is housed.  There is no suggestion that the statute has force outside of the FERS context, and, notably, Dixon cites no support for her assertion that Section 8461(d) applies to claims arising under the RA.

---

[2] Sandwiched into Dixon's jurisdictional argument is her claim that the VA lacked standing to challenge OPM's disability decision. For the reasons we set forth in the opinion, the OPM's disability decision does not alter the outcome of our inquiry.

[3] Dixon's motion for summary judgment erroneously cited 5 U.S.C. § 8347, which applies to Civil Service disability retirement.  Giving Dixon the benefit of the doubt, the district court considered her jurisdictional claim under Section 8461, the analogous FERS statute.  See Dixon-Tribou, 616 F. Supp. 3d at 53 n.13.  Dixon attempts, somewhat confusingly, to assign error based on the district court's decision, despite citing to Section 8461 herself on appeal.  We need not dwell on this issue given that neither statute gets Dixon where she wants to go.

In fact, the cases cited by Dixon work against her. In Anthony v. Office of Personal Management, the Federal Circuit explicitly stated that "Section 8461 of Title 5 . . . sets out OPM's authority to administer FERS benefits." 58 F.3d 620, 624 (Fed. Cir. 1995) (emphasis added). Further, each case that Dixon cites for the premise that Section 8461(d) circumscribes judicial review involved an appeal from the denial of retirement benefits under FERS, not claims of employment discrimination. See Alston v. Off. of Pers. Mgmt., 527 F. App'x 872, 874 (Fed. Cir. 2013) (per curiam) (considering appeal from the denial of plaintiff's "application for disability retirement under FERS"); Black v. Off. of Pers. Mgmt., 250 F. App'x 343, 344 (Fed. Cir. 2007) (per curiam) (reviewing appeal related to plaintiff's FERS disability retirement application); Grayton v. Off. of Pers. Mgmt., 136 F. App'x 364, 365 (Fed. Cir. 2005) (per curiam) (deciding appeal pertaining to the denial of FERS disability retirement benefits); Anthony, 58 F.3d at 622 (affirming the denial of FERS disability benefits). The district court correctly concluded that Section 8461(d) did not bar its review of Dixon's claims at summary judgment.

## B. Preclusion Claim

Dixon next argues, in a similar vein, that the district court erred by not giving OPM's disability retirement decision

preclusive effect against the VA.[4]  According to Dixon, for OPM to grant her disability retirement, it necessarily found that Dixon "was in a position where her disabling MS . . . could not be reasonably accommodated, and that her work deficiencies were due to lack of accommodations."  She further argues that, because OPM found that her work deficiencies were disability-related and not due to her failure to put forth an honest effort in her work, the district court should have precluded the VA from arguing that she was removed for "work dishonesty."

Dixon's preclusion argument is a nonstarter.  First, "a party asserting preclusion must carry the burden of establishing all necessary elements."  Puerto Ricans for P.R. Party v. Dalmau, 544 F.3d 58, 70 (1st Cir. 2008) (quoting 18 Charles Alan Wright &

---

[4] Before the district court and on appeal, Dixon cites the doctrine of res judicata as the basis for her preclusion argument. "Res judicata -- also known as claim preclusion -- is a longstanding legal doctrine that 'a final judgment on the merits of an action precludes the parties from relitigating claims that were or could have been raised in the prior action.'"  Rivera-Rosario v. LSREF2 Island Holdings, Ltd., Inc., 79 F.4th 1, 2 (1st Cir. 2023) (quoting Haag v. United States, 589 F.3d 43, 45 (1st Cir. 2009)).  Given that Dixon's preclusion argument pertains to issues that she claims the VA should have been barred from relitigating, we assume she intended to ground her argument in collateral estoppel -- also known as issue preclusion.  This doctrine provides that "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."  Ríos-Piñeiro v. United States, 713 F.3d 688, 691-92 (1st Cir. 2013) (emphasis omitted) (quoting Mihos v. Swift, 358 F.3d 91, 101 (1st Cir. 2004)).

Arthur R. Miller, Federal Practice and Procedure § 4405, at 83 (2d ed. 2002)). Dixon made no meaningful effort to do so before the district court, instead relying on her own conclusory assertions about what OPM decided and her assumptions about the basis for its decision. The only evidence that she offered as to OPM's decision was a letter stating that she was entitled to disability retirement under FERS. The district court correctly noted that it contained "no factual findings or legal conclusions of any kind." Dixon-Tribou, 616 F. Supp. 3d at 53. Among other deficiencies, Dixon failed to put forth any facts from which it could be determined that the parties "actually litigated" the issues as to which she seeks preclusion, see Ríos-Piñeiro, 713 F.3d at 692 (quoting Mihos, 358 F.3d at 101), or that OPM "[wa]s acting in a judicial capacity" when it made its decision, see id. at 691-92 (quoting United States v. Utah Constr. & Mining Co., 384 U.S. 394, 422 (1966)). Dixon's position that the OPM awarded her benefits based in part on a finding that her disability could not be reasonably accommodated would, if accepted, provide yet another basis for challenging her foundational contention in this case that the VA should be held liable for failing to provide a reasonable accommodation. See Pena v. Honeywell Int'l, Inc., 923 F.3d 18, 27 (1st Cir. 2019). Given the shortcomings of Dixon's preclusion argument, the district court did not err in rejecting her attempt to oppose the VA's motion for summary judgment on this basis.

## C. Other Claims of Error

Finally, Dixon takes aim at the district court's summary judgment decision by pointing to an alleged factual dispute that she claims should have foreclosed summary judgment, as well as evidence allegedly overlooked by the district court. We begin with Dixon's disputed-facts claim.

### 1. Alleged Conflict Between Cochran and Dr. Lash

Dixon argues that the district court erred in granting summary judgment to the VA because there was a dispute of material fact between Cochran and Dr. Lash as to the reasonableness of Dixon's March 2016 telework request. According to Dixon, Dr. Lash opined that her full-time telework request was reasonable. However, Cochran claimed that Dr. Lash recommended only two days of telework per week on a six-month trial basis. Dixon argues that the district court erred by intruding on the role of a jury and resolving this factual dispute at summary judgment.

We need not dive into the issue of materiality -- whether a fact "has the potential of affecting the outcome of the case," Taite v. Bridgewater State Univ., Bd. of Trs., 999 F.3d 86, 93 (1st Cir. 2021) (quoting Pérez-Cordero v. Wal-Mart P.R., Inc., 656 F.3d 19, 25 (1st Cir. 2011)) -- given that the conflict Dixon points to is nonexistent. While Dixon is correct that Dr. Lash stated that a trial of telework was reasonable to manage her MS symptoms, there is no evidence of him opining on the frequency of

said telework. In fact, Dixon's second reasonable accommodation request, which Dr. Lash reviewed, does not specify that she was seeking to telework full-time. Further undercutting Dixon's argument is the fact that Dr. Lash, during a conversation with the ORM investigator, stated that he could "not recall who said what pertaining to the actual number of days that [Dixon] would be permitted to telework on a trial basis." Contrary to Dixon's claim, there is no record support for her assertion that Dr. Lash approved her to telework full-time and thus no factual dispute between Dr. Lash and Cochran precluding summary judgment.

Dixon also appears to argue that the district court erred by not construing the facts related to the reasonableness of her telework request in the light most favorable to her. She asserts that the district court erred when it credited Cochran's statement that Dr. Lash recommended two days of telework per week, as opposed to drawing the more favorable inference that he approved full-time telework. As explained above, the record does not support Dixon's claim that Dr. Lash ever endorsed a full-time telework request. Additionally, Dixon's argument misconstrues the district court's recitation of the facts. Contrary to Dixon's claim, the district court stated that "Dr. Lash recommended 'a trial of strict home temperature control' but did not specify how many days he thought Ms. Dixon-Tribou should be permitted to telework." Dixon-Tribou,

616 F. Supp. 3d at 46 (emphasis added).  We turn next to her overlooked-facts arguments.

### 2. Dixon's Transfer to the Non-VA Care Department

Dixon's next contention on appeal relates to her transfer to the Non-VA Care Department in January 2015.  Dixon asserts that the district court failed to consider the implications of her transfer, namely, that the VA moved her from a position where her MS was accommodated to one where it was not.  Dixon does not spell out the significance that she wishes us to attach to this asserted fact, nor how it applies to her claims.  Assuming, as the VA did, that she would like us to consider her 2015 transfer as the withdrawal of a reasonable accommodation, thus constituting an adverse act by the VA, Dixon faces two problems.  First, the district court did not "overlook" Dixon's 2015 transfer.  During a Local Rule 56(h) conference prior to summary judgment, the district court sought clarification on the adverse actions on which Dixon was relying.  See Dixon-Tribou, 616 F. Supp. 3d at 57 n.20.  Dixon identified three allegedly adverse actions, none of which involved her 2015 transfer.  As such, the district court did not consider said transfer because the court "t[ook] her at her word."  See id.  Second, as the district court correctly noted, Dixon failed to contact an EEOC counselor within forty-five days of her transfer to the Non-VA Care Department.  See id.  Per ORM, said claim was untimely raised and thus barred.  See 29 C.F.R.

- 17 -

§§ 1614.105(a)(1), 1614.107(a)(2); <u>Velazquez-Rivera</u> v. <u>Danzig</u>, 234 F.3d 790, 794 (1st Cir. 2000) (explaining that "administrative remedies had not been exhausted" where plaintiff failed to "contact . . . an [EEOC] counselor within 45 days, as required by 29 C.F.R. § 1614.105(a)(1)"). Given Dixon's representation to the district court about the adverse acts underlying her claims and her failure to exhaust her administrative remedies with respect to her 2015 transfer, the district court did not err in excluding her transfer from its summary judgment analysis.

### 3. Melina Leland Statement

Finally, Dixon contends that the district court overlooked evidence establishing that the VA did not reasonably accommodate her with temperature control of seventy-one degrees or less. Specifically, Dixon points to a statement from her former coworker, Melina Leland ("Leland"), which states that "[o]n the days the office was 75-76 degrees, [Dixon] seemed to have some difficulty focusing and moving from one system to another. The days that it was 69-71, she was able to quickly process her referrals and didn't need my assistance." While Dixon criticizes the district court for failing to consider Leland's statement, Dixon failed to cite said statement in her opposition to the VA's motion for summary judgment. We have previously explained that "litigants ignore [local summary judgment rules] at their peril," <u>Cabán Hernández</u> v. <u>Philip Morris USA, Inc.</u>, 486 F.3d 1, 7 (1st

Cir. 2007), and that it is not the job of the district court to "perus[e] through the summary judgment record in search of disputed material facts," López-Hernández, 64 F.4th at 26 (citation omitted). As such, Dixon cannot fault the district court for failing to consider a fact that she herself failed to put properly before it. See Cabán Hernández, 486 F.3d at 8 (explaining that appellate review is limited to determining "whether the district court appropriately granted summary judgment based on the facts as set forth in [the relevant] moving papers").[5] We find no error on the part of the district court here.

## IV. Conclusion

Having dispensed with Dixon's claims of error and discerning none in the district court's meticulous summary judgment decision, we **affirm**.

---

[5] Even if Dixon properly raised Leland's statement before the district court, Dixon fails to explain on appeal how consideration of the statement would change the summary judgment calculus. The district court, in its analysis of Dixon's failure to accommodate claim, credited her contention that the accommodations provided by the VA sometimes fell short, including the VA's efforts to achieve temperature control. Dixon-Tribou, 616 F. Supp. 3d at 61. The district court noted, however, that the VA made reasonable efforts to accommodate Dixon and that she "point[ed] to no authority for the idea that an employer is liable for imperfect accommodations." Id. Given that Dixon does not challenge the district court's conclusion that imperfect accommodations made in good faith are not "legally deficient," id., we fail to see how consideration of Leland's statement moves the needle.